**Andy J. McMULLEN, Appellant**

v.

**EMPLOYEES RETIREMENT SYSTEM OF TEXAS AND BLUE CROSS AND BLUE SHIELD OF TEXAS, INC., Appellees.**

No. 03–96–00281–CV.

Court of Appeals of Texas, Austin.

Nov. 20, 1996.

Rehearing Overruled Jan. 9, 1997.

Andy J. McMullen, Hamilton, for Appellant.

Michael S. Hull, Maroney, Crowley, Bankston, Richardson & Hull, L.L.P., Austin, for Blue Cross.

Dan Morales, Attorney General, Roxanne Caperton, Assistant Attorney General, General Counsel Division, Austin, for Employees.

Before POWERS, ABOUSSIE and JONES, JJ.

POWERS, Justice.

Andy J. McMullen appeals from a district-court judgment affirming a final order issued by the Board of Trustees of the Employees Retirement System of Texas following a contested case. We will affirm the order and the district-court judgment.

## THE CONTROVERSY

McMullen's young son Aaron had reading difficulties and was examined by Dr. Leonard R. White, an optometrist who specialized in visual development. Dr. White recommended that Aaron be fitted with eyeglasses and that he undergo a course of "vision therapy" to develop his inadequate "neurological skills." The therapy was medically necessary, in Dr. White's opinion, because Aaron's reading difficulties resulted from "an inability of the brain to coordinate and integrate

what is seen into appropriate, meaningful, and timely response." The recommended therapy consisted of eye training and exercises aimed at developing appropriate neurological "patterns." Dr. White fitted Aaron for eyeglasses and performed the recommended therapy.

McMullen is a state employee and Aaron is an insured under a group insurance policy issued by Blue Cross and Blue Shield of Texas, Inc., under the terms of the Texas Employees Uniform Group Insurance Benefits Act (the "Act"), a statute administered by the Board as trustee. *See* Tex. Ins.Code Ann. art. 3.50-2 (West 1981 & Supp.1996). Blue Cross refused to pay McMullen's claim for the sums he paid Dr. White for the eyeglasses and therapy. After a contested-case hearing, the Board denied the claim in a final order affirmed by the district court. *See* Act art. 3.50-2, § 4B; *Beyer v. Employees Retirement Sys.*, 808 S.W.2d 622, 625–26 (Tex.App.—Austin 1991, writ denied). This appeal ensued.

### DISCUSSION AND HOLDINGS

■ The scope of our review of the Board's order is that provided for cases of "substantial evidence" review under the terms of the Administrative Procedure Act. *See* Tex. Gov't Code Ann. § 2001.174 (West 1995) ("APA"); Act art. 3.50–2, § 4B(d). That is to say, we may not reverse the Board's order unless the agency record demonstrates that McMullen's substantial rights have been prejudiced by the Board's committing one of the errors listed in section 2001.174(2)(A)-(F) of the APA. And we must uphold the order on any legal basis shown in the record even if the Board gave an erroneous legal basis for its decision. *See Railroad Comm'n v. City of Austin*, 524 S.W.2d 262, 279 (Tex.1975); *Texas Employment Comm'n v. Hays*, 360 S.W.2d 525, 527 (Tex.1962).

■ We believe the ultimate issue on appeal may be discussed under McMullen's fourth point of error in which he contends the Board's decision, that Dr. White's services came within a policy exclusion, is not supported by substantial evidence. The relevant evidence is undisputed concerning the nature of the services provided by Dr. White.

We have summarized that evidence above. The ultimate issue is whether the Board erred in its conclusions of law that Dr. White's services came within the following exclusion from coverage set out in the Blue Cross policy:

> Benefits are not payable for the services and supplies listed below:
>
> * * *
>
> F.  Treatment of myopia and other errors of refraction; *orthoptics or visual training;* radial keratotomy; *eyeglasses* including contact lenses, or *examinations* for the prescription or fitting thereof; or examinations for purpose of determining visual acuity.

(Emphasis added.) Dr. White's services in connection with Aaron's eyeglasses were in our view expressly and unambiguously excluded from coverage, as the Board determined in conclusion of law three. We turn to the Board's conclusion of law four in which the Board determined that Dr. White's "vision therapy treatments" came within the exclusion of "orthoptics or visual training."

■ The Board, as trustee, is empowered by statute to prepare the coverage specifications in group policies made under the Act. *See* Act art. 3.50–2, § 4(a). In adjudicating the contested case, the Board had the undoubted power to determine as a matter of law the meaning of its chosen words "orthoptics or visual training" as they are used in the policy exclusion. As in the case of an agency's interpretation of its own regulations or a statute entrusted to the agency's administration, we believe the Board's interpretation of the policy exclusion is entitled to judicial respect regarding any uncertainty and should be upheld if the interpretation is a reasonable one. *Cf. Railroad Comm'n v. Shell Oil Co.*, 139 Tex. 66, 161 S.W.2d 1022, 1027–28 (1942) (agency's interpretation of its regulation); *Calvert v. Kadane*, 427 S.W.2d 605, 608 (Tex.1968) (agency interpretation of statute); *Pacific Employers Ins. Co. v. Brannon*, 150 Tex. 441, 242 S.W.2d 185, 189 (1951) (agency interpretation of statute).

We believe the term "orthoptics or visual training," while broad, is not ambiguous. In ordinary usage, the word "orthoptics" means

"the treatment or the art of treating defective visual habits, defects of binocular vision, and muscle imbalance ... by reeducation of visual habits, exercise and visual training." *Webster's Third International Dictionary* 1595 (Philip B. Grove ed., 1986). Dr. White described in almost the same terms the visual therapy he provided Aaron.[1] We cannot conclude the Board's interpretation, being in accord with ordinary usage, is unreasonable. We therefore overrule McMullen's fourth point of error.

 In McMullen's first point of error, he complains the Board improperly placed upon him the burden to prove that his claim did not come within the policy exclusion. In point of error three, he complains the Board disregarded a proper stipulation made by the parties in the course of the contested case—a stipulation limiting the controversy to whether Dr. White's services came within the meaning of the policy exclusion. We hold the errors assigned in points of error one and three did not prejudice McMullen because the evidence was undisputed regarding the particulars of Dr. White's therapy and we have determined the lawfulness of the Board's order as the alleged stipulation required. Absent prejudice to McMullen's substantial rights, we may not reverse the Board's order. APA § 2001.174(2).

In McMullen's second point of error, he complains the district judge neglected, after proper request, to file findings of fact and conclusions of law. We hold the district judge did not err. His review was confined to the agency record and, save for circumstances not applicable here, he was forbidden to receive evidence. *See* APA § 2001.175(e). Thus there existed no evidence from which the judge could infer facts and no occasion to give any fact findings legal effect through conclusions of law. We overrule the second point of error.

In McMullen's fifth point of error, he complains of the cumulative effect of the errors he assigns in points of error one through four. We have found those assignments to be without merit. We therefore overrule point of error five.

We affirm the Board order and the district-court judgment.

---

1. The therapy consisted of five parts, as follows: (1) "gross motor" activities requiring Aaron to use large muscles and body parts to develop neurological "patterns" for coordinating the body's senses; (2) "monocular" therapy to develop neurological "patterns" for performance of monocular vision skills; (3) "sensory integration" or integration of visual-physical performance skills; (4) "binocular" therapy to develop neurological "patterns" that result in the use of both eyes simultaneously; and (5) "binocular ranges" or developing ranges and latitudes to secure sustained visual activity over a respectable period of time.