BOARD OF TRUSTEES OF the EMPLOYEES RETIREMENT SYSTEM OF TEXAS and Group Life & Health Insurance Company, Appellants,

v.

Linda BENGE, Appellee.

No. 03–96–000369–CV.

Court of Appeals of Texas, Austin.

March 27, 1997.

Rehearing Overruled May 1, 1997.

Dan Morales, Attorney General, Roxanne Caperton, Assistant Attorney General, General Counsel Division, Austin, for Board of Trustees of ERS.

Andrew F. MacRae, Michael S. Hull, Maroney, Crowley, Bankston, Richardson & Hull, L.L.P., Austin, for Group Life & Health Insurance Company.

Catherine Brown Fryer, Bickerstaff, Heath, Smiley, Pollan, Kever & McDaniel, Austin, for Appellee.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

The Board of Trustees of the Employees Retirement System of Texas denied accidental death benefits, holding that the insured's death was caused by air travel or flight, an activity excluded from coverage under the policy at issue. The district court ruled that *Stroburg v. Insurance Co. of North America*, 464 S.W.2d 827 (Tex.1971), required the Board to make a specific finding that the excluded activity was the proximate cause of death before denying benefits; it remanded this matter to the Board for such a determination. We hold that *Stroburg* imposes no such requirement under these circumstances. We will reverse the district court's judgment and affirm the order of the Board.

## FACTUAL AND PROCEDURAL BACKGROUND

State Representative James F. Hury flew his plane in an air show in October 1992. When he landed, his plane went into a "ground loop,"[1] turning completely around before coming to a stop in the neighboring runway. Another plane, which landed moments later, collided with Mr. Hury's plane. Mr. Hury, who had not yet disembarked, suffered substantial injuries resulting in his death. At the time of the accident, Mr. Hury was insured under a life insurance policy issued by Group Life and Health Insurance Company, under the terms of the Texas Employees Uniform Group Insurance Benefits Act, which is administered by the Board as trustee. *See* Tex. Ins.Code Ann. art. 3.50–2 (West 1981 & Supp.1997). After receiving $171,000 in term life benefits, Mr. Hury's widow, Linda Benge, also sought accidental death benefits. Group Life denied recovery based on the policy's aviation exclusion. After a contested case hearing, the Board denied the claim in a final order. Ms. Benge sought judicial review of the Board's order. The district court upheld the Board's finding that Mr. Hury had been engaged in air flight or travel at the time of his death, but was persuaded by its reading of *Stroburg* that the Board incorrectly applied the aviation exclusion without first determining that the excluded activity was *the* proximate cause of Mr. Hury's death. The district court remanded the cause to the Board to make a proximate cause determination. The Board and Group Life appeal the district court's

1. The Board found that a "ground loop" is a loss of directional control.

judgment remanding this cause to the Board.[2] By cross appeal, Ms. Benge contends Mr. Hury was not engaged in air travel or flight at the time of the accident.

## DISCUSSION

▮ The standard of our review of the Board's order is that provided for cases of "substantial evidence" review under the terms of the Administrative Procedure Act. *See* Tex. Gov't Code Ann. § 2001.174 (West 1995); *see also* Tex. Ins.Code Ann. art. 3.50–2, § 4B(d) (West Supp.1997). That is to say, we may not reverse the Board's order unless the agency record demonstrates that Benge's substantial rights have been prejudiced by the Board's committing one of the errors listed in section 2001.174(2)(A)–(F) of the APA. We must uphold the order on any legal basis shown in the record even if the Board gave an erroneous legal basis for its decision. *See Railroad Comm'n v. City of Austin,* 524 S.W.2d 262, 279 (Tex.1975); *Texas Employment Comm'n v. Hays,* 360 S.W.2d 525, 527 (Tex.1962).

▮ The policy excludes coverage for loss caused by or resulting from:

E. Travel or flight in any vehicle or device for aerial navigation, including boarding or alighting therefrom:

. . . .

3. While traveling or flying in an aircraft ... as a pilot or member of the crew....

In denying coverage based on the exclusion, the Board found that (1) Mr. Hury was engaged in air travel or flight as contemplated by the language of the exclusion, and (2) this participation in air travel or flight caused or resulted in his death. We will first consider the Board's finding that Mr. Hury was en-

gaged in air travel or flight because if this finding is not supported by substantial evidence we need not address the issue of causation.

### Air Travel or Flight

In her first cross point of error, Ms. Benge contends that the Board erred in finding that Mr. Hury was engaged in flight or travel as contemplated by the aviation exclusion. Her argument rests on the contention that a plane standing still on the runway, as Mr. Hury's plane was at the moment of impact, cannot reasonably be considered to be engaged in travel or flight, since both concepts imply movement. We reject this contention and defer to the Board's interpretation of the policy exclusion.

▮ Pursuant to statute, the Executive Director of ERS has "exclusive authority to determine all questions relating to enrollment in or payment of claims arising from programs or coverage provided under authority of this Act." Tex. Ins.Code Ann. art. 3.50–2, § 4B(a) (West Supp.1997). Accordingly, in adjudicating a contested case, the Board has the undeniable power to determine as a matter of law the meaning of its chosen words. *See McMullen v. Employees Retirement System of Texas,* 935 S.W.2d 189, 191 (Tex.App.—Austin 1997, writ requested). As in the case of an agency's interpretation of its own regulations or a statute entrusted to the agency's administration, the Board's interpretation of a policy exclusion is entitled to judicial respect regarding any uncertainty. *See Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex.1993). The Board's ruling that Mr. Hury was engaged in air travel or flight is presumptively valid and will be upheld so long as the interpretation is a reasonable one. *See McMullen,* 935 S.W.2d at 191.

---

**2.** The Board brings five points of error complaining that the district court erred (1) in holding that a fact finding on proximate cause is required; (2) by holding that the excluded activity must be *the* proximate cause of death; (3) by not finding proximate cause as a matter of law if such a finding is required; (4) by prohibiting the agency from accepting new evidence on remand; and (5) by not affirming the Board's conclusion because it was supported by substantial evidence and was not arbitrary or capricious. Group Life

brings four points complaining that the district court erred by (1) applying *Stroburg* to an aviation exclusion; (2) requiring a finding of fact on the issue of proximate cause; (3) remanding to the Board for a finding that the excluded activity was the proximate cause of death; and (4) reversing and remanding the cause to the Board. Because they generally overlap, we will discuss the two appellants' points of error together when possible.

In conducting a substantial evidence review, we must first determine whether the evidence as a whole is such that reasonable minds could have reached the conclusion the agency reached. *See Texas State Bd. of Dental Examiners v. Sizemore,* 759 S.W.2d 114, 116 (Tex.1988), *cert. denied,* 490 U.S. 1080, 109 S.Ct. 2100, 104 L.Ed.2d 662 (1989).

The contract provision excludes loss caused by or resulting from "[t]ravel or flight in any vehicle or device for aerial navigation including boarding or alighting therefrom." The use of such inclusive language contemplates that travel or flight continues over a continuum of time. Ms. Benge argues that travel contemplates only movement through space and once Mr. Hury brought his plane to a complete stop on the runway he was no longer flying or traveling through space. Although at the time of the collision Mr. Hury's flight may have ended in the aeronautic sense of the word, the fact that his plane was stopped does not mean that his flight or travel was over within the legal meaning of the aviation exclusion. The Board construed "travel or flight" to encompass the time period from the moment of boarding through disembarking rather than just the period of actual movement through the air or on the ground. The exclusion itself defines travel or flight as including boarding or alighting from the plane. Mr. Hury may have momentarily stopped on the runway, but had he not been struck by the landing plane, he would have had to taxi his plane to a hangar or holding area where he could safely deplane. His travel had not ended in any meaningful sense of the word.

The Board soundly construed "travel or flight" to encompass the time period of a few seconds following Mr. Hury's landing of his plane, irrespective of the plane's actual movement at that instant. Ms. Benge's proposed construction would result in intermittent coverage depending on a plane's actual movement through space: a pilot waiting on a runway for take-off instructions would be covered, while a pilot taxiing off the runway would be excluded from coverage. The Board could have reasonably rejected such an arbitrary construction of the policy exclusion. Moreover, the Board could have reasonably concluded that the risks associated with flight encompass the risk of landing the plane and the risk of losing control upon landing by looping over into the landing space allotted to another plane. We hold the Board's interpretation of air travel or flight as contemplated by the aviation exclusion is neither legally erroneous nor arbitrary and capricious. We further hold its finding that Mr. Hury was engaged in air travel or flight is supported by substantial evidence, and overrule the first cross point. Because of our subsequent holding, we need not address the second cross point of error.

*Stroburg and Proximate Cause*

After determining that Mr. Hury had been engaged in air travel or flight, the Board concluded that his death was caused by or resulted from that activity. The district court relied on *Stroburg v. Insurance Co. of North America,* 464 S.W.2d 827 (Tex. 1971), to hold that the Board was required to find that air travel or flight was *the proximate cause* or *cause-in-fact* of Mr. Hury's injuries before it could apply the aviation exclusion. In their overlapping points of error, the Board and Group Life complain it was error to remand for a finding on proximate cause because *Stroburg* either does not apply to aviation exclusions, or does not require that the excluded activity be the sole proximate cause of the injuries. We are persuaded that the district court misapplied the holding in *Stroburg* to the Board's decision in this matter.

The insurance policy in *Stroburg* covered losses "resulting directly and independently of all other causes from bodily injuries caused by accident" and expressly excluded losses caused by or resulting from illness or disease. The insured died from multiple injuries received in a car accident. The insurance company denied coverage, alleging that the insured's pre-existing bleeding ulcer had caused the accident and that emphysema compromised the insured's recovery from his injuries. The jury awarded benefits under the policy. The court of appeals reversed and rendered judgment for the insurance company, finding that there was no evidence to uphold the jury's finding that the accident "directly and independently" caused the in-

sured's death. *Insurance Co. of North America v. Stroburg*, 456 S.W.2d 402 (Tex. Civ.App.—Austin 1970), *rev'd*, 464 S.W.2d 827 (Tex.1971). The intermediate court never considered the language of the exclusionary clause, but held that Mr. Stroburg's death did not fall within the coverage provision which required the accident to be the cause of death "independently of all other causes." The Texas Supreme Court disagreed that the evidence established *as a matter of law* that either the ulcer or the emphysema was a concurring cause of Mr. Stroburg's death; it reinstated the jury's verdict because some evidence supported the jury's findings that the accident directly and independently caused the death, without regard to the ulcer or the emphysema.[3] In reaching its decision, the supreme court noted that when a policy covers losses "directly and independently" caused by accidental injury, the accident must be the sole cause of death. *Id.* at 829. But it also stated that in this regard, preexisting disease or illness would not defeat recovery if the condition or disorder is "so remote in the scale of causation, so dormant and insubstantial, or so temporary and transient that it does not materially contribute to the death or injury." *Id.* (quoting *Mutual Benefit Health & Accident Ass'n v. Hudman*, 398 S.W.2d 110, 112 (Tex.1965)). The jury was so instructed in *Stroburg* and could have reasonably concluded that Mr. Stroburg's ulcer and emphysema were so insubstantial in the scale of causation that they did not in legal contemplation contribute to the cause of death.

The issue before the supreme court in *Stroburg* was whether some evidence supported the jury's findings that death resulted from the accident "independently of all other causes." The court of appeals had not addressed the applicability of the exclusion clause and that issue was not presented to the supreme court. Nevertheless, the supreme court's opinion contains additional language suggesting that an exclusion for loss "caused by or resulting from" certain risks will exclude liability "only when such risks

are a proximate as distinguished from an indirect or remote cause of the loss." *Id.* at 831–32. Several courts have followed *Stroburg* by holding that coverage can be denied under an illness or disease exclusion only when the illness or disease has *proximately caused* the loss. *See Connecticut Gen. Life Ins. Co. v. Stice*, 640 S.W.2d 955, 958 (Tex. App.—Dallas 1982, writ ref'd n.r.e.); *American Hosp. & Life Ins. Co. v. Choate*, 513 S.W.2d 902, 903–04 (Tex.Civ.App.—Beaumont 1974, no writ); *National Life & Accident Ins. Co. v. Franklin*, 506 S.W.2d 765, 768 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). In applying this type of policy exclusion, courts have required proximate causation to ensure that coverage is denied only when the illness or disease is a material, not a remote, cause of the loss. The *Stroburg* court noted that "a remote cause of a cause would not be proximate cause." *Stroburg*, 464 S.W.2d at 831. By requiring that the accident be the sole cause of death and prohibiting the excluded risk, i.e., the illness, from being a remote cause, the supreme court was able to give the intended coverage full effect. Absent this "proximate cause" requirement, exclusions based on illness or disease would always eliminate accidental injury coverage unless the victim was in perfect health at the time of the accident. As Justice Cardozo aptly stated, policies are issued to those who are neither "an Apollo or Hercules."[4] *Stroburg*'s reasoning prevents the illness or disease exclusion from swallowing up the policy's intended coverage for the risk of loss from accidental injury.

By contrast, policies involving aviation exclusions seek to exclude accidental loss resulting from a certain risky activity. Accidental death or loss is considered to be more probable when one is piloting or serving as a crew member of an aircraft. That is the very risk that the exclusion encompasses. However, rarely is a pilot or crew member injured by an actual mid-air collision during flight; death or loss typically results from

---

**3.** The supreme court then remanded the cause to the court of appeals to review the challenges to the factual sufficiency of the evidence. *Stroburg*, 464 S.W.2d at 832.

**4.** *Silverstein v. Metropolitan Life Ins. Co.*, 254 N.Y. 81, 171 N.E. 914, 915 (1930).

drowning or some other calamity precipitated by the aerial activity. Ms. Benge contends *Stroburg* requires the excluded risk be the sole proximate cause of death in order for the exclusion to take effect. A literal requirement that air travel or flight be the *sole proximate cause* of a loss occasioned by flying would severely restrict the effectiveness of every aviation exclusion. This is illustrated by Ms. Benge's argument that the sole proximate cause of Mr. Hury's death was another plane colliding with his on the runway at a time when Mr. Hury was neither flying nor traveling. Ms. Benge concedes that Mr. Hury was put in harm's way by the excluded risk, but insists that the excluded risk was not the *sole* proximate cause of his injuries. *Stroburg* does not require such an absurd result, and the courts that have considered aviation exclusions have not so applied it.

In *Lincoln Liberty Life Ins. Co. v. Goodman*, 535 S.W.2d 7 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.), the insured died when his plane crashed in Lake Michigan. The plaintiff sought to avoid the policy exclusion which denied certain benefits for loss "occur[ring] as a result of operating, riding in or descending from any kind of aircraft," by claiming the cause of death was drowning. *Id.* at 8. The court held that the aviation exclusion applied even though evidence supported the jury's finding that the insured had indeed died by drowning. *See id.* at 11. The court relied on a Fifth Circuit holding that a policy exclusion for death resulting from travel or flight was intended to exclude the risks of aviation and one such perceived risk was death by drowning after an airplane is downed at sea. *See Elliott v. Massachusetts Mut. Life Ins. Co.*, 388 F.2d 362, 368 (5th Cir.1968).

In *Neel v. Mutual Life Insurance Co.*, 131 F.2d 159 (2d Cir.1942), the Second Circuit also refused to limit the aviation exclusionary clause in an "unexpected and unreasonable way" by splitting the chain of causation. *Neel* recognized that such clauses intend to exclude the most *ordinary risks* associated with air travel or flight, such as death by drowning after a crash. *Id.* at 160–61. In numerous cases involving death by drowning or exposure after a crash, courts have consistently denied benefits because of aviation exclusion clauses. *See Hobbs v. Franklin Life Ins. Co.*, 253 F.2d 591 (5th Cir.1958) (insured eventually drowned after plane crashed leading to exposure and exhaustion); *New York Life Ins. Co. v. Rogers*, 641 P.2d 218 (Alaska 1982) (uninjured by plane's water landing, insured subsequently died of hypothermia or drowning); *Totten v. New York Life Ins. Co.*, 68 Or.App. 253, 680 P.2d 1021 (1984), *aff'd*, 298 Or. 765, 696 P.2d 1082 (1985) (insured drowned after his hang glider landed in the ocean).

In *Cabell v. World Service Life Insurance Co.*, 599 S.W.2d 652 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.), the insured died when his parachute lost its lift during descent and he fell to the ground. His accidental death policy excluded losses caused by, contributed to, or resulting from injury sustained while *riding in any vehicle or device for aerial navigation.*[5] The plaintiff contended that the insured was not engaged in aviation when he was killed. The court found that the insured had died as a result of participating in aviation because a malfunctioning parachute would be an ordinary risk contemplated by a policy excluding aerial activities.

■ Surely one of the most ordinary risks associated with flying is the risk of accident upon landing one's plane. Here, after Mr. Hury landed he lost directional control as his plane went into a "ground loop." The plane spun completely around and moved from the right to the left runway, coming to rest with its nose pointing toward the trailing plane that was designated to land there seconds later. Neither plane was able to avoid the collision. The aviation exclusion contemplated just such a risk.

---

5. In insurance cases involving exclusionary clauses, "contributed to" does not lighten the burden for the insurer by requiring only that the excluded activity be a concurring cause of the loss. *See National Life & Accident Ins. Co. v.*

*Franklin*, 506 S.W.2d 765 (Tex.Civ.App.—Houston [14th Dist.] 1974 writ ref'd n.r.e.). Thus, *Cabell* is not distinguishable based on the "contributed to" language found in the exclusionary clause.

In *Stroburg* the court was dealing with a provision excluding liability for loss resulting from illness or disease; the court found some evidence supported the jury's finding that the procuring cause of loss was accidental, despite the presence of an ulcer and emphysema that might have indirectly contributed to death in a medical sense. The *Stroburg* court never stated that the excluded risk must be the sole proximate cause of injury before benefits could be excluded. Rather, the court held that coverage would not be defeated as a matter of law if the risk intended to be covered, accidental injury, was a proximate not a remote cause of Mr. Stroburg's death. Here the Board found that the risk intended to be excluded, flying an airplane, caused Mr. Hury's death. To require a finding of sole proximate cause before excluding a loss so clearly contemplated by an aviation exclusion would limit the exclusion in an unexpected and unreasonable manner. Proximate causation, in the insurance context, whether applied to coverage or to an exclusion, does not require the fact finder "to search beyond the active, efficient, procuring cause to a cause of a cause." *Stroburg,* 464 S.W.2d at 830–31 (citation omitted). *Stroburg* requires only that the excluded risk be *a* proximate or direct cause, as distinguished from an indirect or remote cause, of the loss suffered.

We have upheld the Board's finding that Mr. Hury was engaged in air travel or flight at the time of his death. His air travel was not remote in time or space: the accident occurred only moments after Mr. Hury landed and his plane veered into the path of the next landing aircraft. Under these circumstances, the Board could reasonably have found that Mr. Hury's flying activity was a direct, not an indirect, cause of his accident. *Stroburg* requires nothing more.

We hold that the district court erred in remanding this matter to the Board to make a separate finding that air travel or flight was *the* proximate cause of Mr. Hury's injuries. We sustain the Board's first and second points of error and Group Life's first, second and third points of error. Because of this holding we need not address the Board's fourth point of error.

In reviewing this agency decision, we hold there was substantial evidence before the Board to support its finding that air travel or flight caused Mr. Hury's accident and that this was a risk contemplated by the aviation exclusion. Because its order was supported by substantial evidence and was not arbitrary or capricious, the district court erred in not affirming the decision of the Board. We sustain the Board's fifth and Group Life's fourth point of error.

## CONCLUSION

We affirm the district court's judgment and the Board's finding that Mr. Hury was engaged in air travel or flight at the time of his death. We reverse the district court's judgment remanding this case to the Board for a specific finding that this excluded activity was the proximate cause of Mr. Hury's injuries. We affirm the Board's order denying accidental death benefits to Ms. Benge.

CARROLL, C.J., not participating