# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00178-CV

**Ann J. Schneider, Appellant**

**v.**

**Employees Retirement System of Texas, et. al., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. GN002530, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Ann J. Schneider appeals the district-court judgment affirming an order issued by the Board of Trustees of the Employees Retirement System of Texas ("the Board") that denied her insurance claim for long-term disability benefits because (1) she filed her claim late and (2) her alleged disability arose from a preexisting condition excluded by the insurance policy. On appeal, Schneider contends that the district court erred in affirming the Board's order. Because we find substantial evidence to support the order, we affirm the district court's judgment.

### BACKGROUND

The record shows that Schneider worked as a sign-language interpreter at Houston Community College (HCC) from 1985 to 1993, working part-time from 1985 to 1992 and full-time from 1992 to 1993. In August 1991, she began to experience pain in her wrists. A month later, she went to Dr. Mark Franklin seeking evaluation and treatment. She continued seeing Dr. Franklin on

a regular basis until March 1992, when he referred her to Dr. David Hildreth. Dr. Hildreth examined Schneider and ordered diagnostic tests for her hands and wrists. He then diagnosed her condition as carpal tunnel syndrome and tenosynovitis of the right hand and wrist. In May 1992, Schneider applied for workers' compensation based on her wrist injury. Later that month, Dr. Hildreth operated on Schneider's right wrist. After the operation, Schneider continued to see Dr. Hildreth regularly for treatment both before and after she stopped working in February 1993.

In August 1992, Schneider became a full-time employee and applied for the Uniform Group Insurance Program ("the Program"),[1] which provides health and disability insurance benefits to state and higher-education employees. Group Life and Health Insurance Company ("Group Life") administered the Program on behalf of the Employees Retirement System of Texas (ERS).[2] Schneider applied for the Program's health and disability insurance in October 1992, and the insurance became effective on November 1, 1992. In February 1993, Schneider stopped working at HCC as a result of the pain in her wrists, and she officially resigned two months later.

In February 1995, Schneider filed a claim for long-term disability benefits with Group Life. Group Life denied the claim on the ground that it was not filed within the twelve-month time frame required by the insurance policy. Group Life relied on the following policy provision in denying the claim:

---

[1] The Program is now called the "Texas Employees Group Benefits Program." *See* Tex. Ins. Code Ann. § 1551 (West 2007).

[2] Although Group Life and Health Insurance Company was the name of the insurer at the time Schneider's claim arose, the company is now known as Fort Dearborn Life Insurance Company. *See Nobles v. Employees Ret. Sys. of Tex.*, 53 S.W.3d 483, 485 n.1 (Tex. App.—Austin 2001, no pet.).

Proof of Loss: Written proof of loss must be furnished to the Insurer at its Home Office in Richardson, Texas, within the 12 months after the commencement of the period for which the Insurer is liable . . . Failure to furnish such proof within the time required shall not invalidate or reduce any claim if it was not reasonably possible to furnish such proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the Employee, later than one year from the time proof is otherwise required.

Schneider requested that ERS review the denial of her claim. After a review, ERS determined that Group Life was correct in denying the claim, stating that Schneider was not entitled to benefits because her claim arose from an excluded preexisting condition. Schneider's policy excluded coverage for preexisting conditions in the following provision:

Benefits shall not be payable for [a]ny Total Disability of an Employee whose coverage is first effective on or after the Policy Date, which commences during the first six months that the Employee's insurance is in force, if the Total Disability is caused or contributed to by, or is a consequence of, an Injury or Sickness for which the Employee received medical treatment, or services, or took prescribed drugs or medicines during the three-month period immediately prior to the effective date of such insurance.

Schneider sought review by the Board, which referred the case to an administrative law judge (ALJ) for an evidentiary hearing. The ALJ issued findings of fact, conclusions of law, and a proposal for decision recommending that the claim be denied both because it was filed late and because it arose from an excluded preexisting condition. The Board adopted the ALJ's findings and conclusions in a final order denying Schneider's claim. Schneider's motion for rehearing was overruled by operation of law.

3

Schneider sought judicial review of the Board's final order in Travis County district court, and the district court affirmed the order. This appeal followed.

**DISCUSSION**

*Burden of Proof*

In a preliminary issue, Schneider contends that the ALJ improperly placed the burden of proof on Schneider to negate the two affirmative defenses—untimely filed claim and excluded preexisting condition—raised by ERS. Generally, an insured bears the initial burden of showing that there is coverage under an insurance policy, and the insurer bears the burden of proving the applicability of an exclusion that permits it to deny coverage. *See* Act of May 27, 1991, 72nd Leg., R.S., ch. 242, § 11.03(a), 1991 Tex. Gen. Laws 939, 1046 (former Tex. Ins. Code Ann. art. 21.58, which stated that insurer had burden of proof as to affirmative defenses), *repealed by* Act of May 20, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3611, 4138;[3] *Venture Encoding Serv., Inc. v. Atlantic Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex. App.—Fort Worth 2003, pet. denied); *Nobles v. Employees Ret. Sys. of Tex.*, 53 S.W.3d 483, 489 (Tex. App.—Austin 2001, no pet.). Once the insurer proves the applicability of an exclusion, the burden then shifts back to the insured to demonstrate that she has coverage under an exception to the exclusion. *Venture Encoding*, 107 S.W.3d at 733; *see also Nobles*, 53 S.W.3d at 489 (insured has burden to prove direct case, including proof of coverage and entitlement to policy proceeds). Here, we find no evidence to support Schneider's assertion that she was required to negate ERS's affirmative defenses. The ALJ said nothing in his proposal for decision about a burden to negate ERS's affirmative defenses, but

---

[3] We apply former article 21.58 because it was in force at the time of Schneider's hearing.

rather stated that Schneider failed to prove that she was still entitled to coverage despite the applicability of the affirmative defenses. Specifically, after determining that the evidence established that Schneider filed her claim late, the ALJ stated that in order for the late filing to be excused, "Schneider was required to prove that 'it was not reasonably possible' to furnish the proof of loss within the required time." Regarding the preexisting-condition exclusion, the ALJ stated that "Schneider's claim should be denied because the evidence established that her claim arose from an excluded preexisting condition, and Schneider failed to prove that any exception or waiver of the exclusion applied." Thus, the ALJ's proposal for decision makes it clear that the ALJ properly placed the burden on ERS to prove the untimeliness of Schneider's application and the applicability of the preexisting-condition exclusion, and that once ERS did so, the ALJ properly shifted the burden to Schneider to prove that her late filing was excused and that she was entitled to coverage under the exception to or waiver of the exclusion. Because the ALJ imposed the proper burden of proof on both ERS and Schneider, we overrule this issue.[4] *See Venture Encoding*, 107 S.W.3d at 733; *Nobles*, 53 S.W.3d at 489.

---

[4] Also in support of her argument, Schneider refers to a letter she received from ERS informing her that she would have the burden of proof at the hearing. We do not find anything improper about such a statement because the statement is consistent with the principle that an insured bears the burden of proving her entitlement to coverage under her insurance policy. *See Venture Encoding Serv., Inc. v. Atlantic Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex. App.—Fort Worth 2003, pet. denied); *Nobles*, 53 S.W.3d at 489.

***Preexisting-Condition Exclusion***[5]

## A. Standard of Review

Judicial review of an administrative order following a contested-case proceeding is governed by the substantial-evidence rule. *See* Tex. Gov't Code Ann. §§ 815.511(f), 2001.174 (West 2007). "Broadly speaking, the substantial evidence rule is a court review device to keep the courts out of the business of administering regulatory statutes enacted by the Legislature; but it remains the business of the courts to see that justice is administered to competing parties by governmental agencies." *Lewis v. Metropolitan Sav. & Loan Ass'n*, 550 S.W.2d 11, 13 (Tex. 1977). In conducting a substantial-evidence review, we determine whether the evidence as a whole is such that reasonable minds could have reached the same conclusion as the agency in the disputed action. *Coalition for Long Point Pres. v. Texas Comm'n on Envtl. Quality*, 106 S.W.3d 363, 366 (Tex. App.—Austin 2003, pet. denied). We may not substitute our judgment for that of the agency and may consider only the record on which the agency based its decision. *Id*. The issue for the reviewing court is not whether the agency reached the correct conclusion, but whether there is some reasonable basis in the record for the agency's action. *Id*. at 367. The findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden to prove otherwise is on the contestant. *Id*.

---

[5] In addition to her argument regarding the preexisting-condition exclusion, Schneider also contends that: (1) ERS was required to show prejudice as a result of Schneider's untimely filed claim, and (2) ERS impermissibly broadened the issues of her appeal in violation of her due-process rights. Because our determination regarding the preexisting-condition exclusion in Schneider's insurance policy is dispositive of this appeal, we do not reach her remaining issues. *See* Tex. R. App. P. 47.1 (requiring opinions to be as brief as practicable in addressing issues necessary to final disposition of appeal).

Taking these principles into consideration, we address the following in turn: (1) the preexisting-condition exclusion, (2) the exception to the exclusion, and (3) the waiver of the exclusion.

### B. Exclusion

The preexisting-condition exclusion provides:

> Benefits shall not be payable for [a]ny Total Disability of an Employee whose coverage is first effective on or after the Policy Date, which commences during the first six months that the Employee's insurance is in force, if the Total Disability is caused or contributed to by, or is a consequence of, an Injury or Sickness for which the Employee received medical treatment, or services, or took prescribed drugs or medicines during the three-month period immediately prior to the effective date of such insurance.

Schneider's coverage began on November 1, 1992. Her alleged total disability occurred in February 1993. The record shows that Dr. Hildreth had previously operated on Schneider's right wrist in May 1992 after diagnosing her condition as carpal tunnel syndrome and tenosynovitis of the right hand and wrist. After the operation, Schneider continued to see Dr. Hildreth regularly for treatment, including in August 1992, when his medical records indicate that she still had "some achy pain" in her hands, that she was "very, very concerned about restarting work," and that he was prescribing her a medication called Feldene. Dr. Hildreth's records also show that Schneider filled her Feldene prescription at a Walgreens pharmacy on October 28, 1992. Thus, Schneider received medical services and took a prescribed medication for her condition during the three-month period immediately preceding the effective date of her coverage, bringing her within the preexisting-condition exclusion.

7

### C. Exception

Schneider concedes that the exclusion applies to her case, but she contends that she falls within the exception to the exclusion. The exception states:

> [The preexisting-condition] exclusion shall not be applicable:
> 1. After the Employee has been Actively at Work for six consecutive months; or
> 2. After the Employee's insurance has been continuously in force for 12 months.

Schneider argues that the exception provision requires only that she prove that she was actively at work for six consecutive months at any time before she became disabled. Based on her interpretation, she asserts that her case falls within the exception because she was employed at HCC from 1985 to 1993 and was actively at work on a part-time basis for at least six consecutive months of that time. On the other hand, the Board determined that the exception provision requires that Schneider prove that she was actively at work for six consecutive months *after her disability coverage began*. Consequently, the Board concluded that Schneider was not entitled to the exception because she stopped working in February 1993, less than six months after the effective date of her coverage.

In considering this issue, we note that the executive director of ERS has "exclusive authority to determine all questions relating to enrollment in or payment of a claim arising from group coverages or benefits provided under [the Texas Employees Group Benefits Act]." *See* Tex. Ins. Code Ann. § 1551.352 (West 2007). Thus, in adjudicating a contested case, the Board has the power to determine as a matter of law the meaning of its chosen words. *Board of Trs. of*

*Employees Ret. Sys. of Tex. v. Benge*, 942 S.W.2d 742, 744 (Tex. App.—Austin 1997, writ denied). As in the case of an agency's interpretation of its own regulations or a statute entrusted to the agency's administration, the Board's interpretation of a policy exclusion is entitled to judicial respect regarding any uncertainty. *Id.* The Board's ruling is presumptively valid and will be upheld as long as the interpretation is a reasonable one. *Id.*

We conclude that the Board reasonably interpreted the provision to require six consecutive months of active work after the effective date of coverage. Under Schneider's interpretation, an employee would be entitled to disability benefits on the very first day her disability coverage became effective as long as she had previously been actively at work for six consecutive months. This would be true even if the employee had recently been treated for a condition that she knew would soon result in her disability. Thus, the employee could apply for disability coverage with full knowledge that she would immediately begin reaping the benefits of the policy. The Board could have reasonably rejected such a construction of the exception provision, concluding that requiring employees to work for six months after the effective date of coverage would minimize the risk of the scenario described above, whereas merely requiring employees to work for six months at any point before they became disabled would not. Accordingly, we hold that the Board's interpretation of the exception provision, requiring an employee to be actively at work for six consecutive months after coverage begins, is both reasonable and supported by substantial evidence.[6]

---

[6] We note that an employee benefits booklet further supports the Board's interpretation of the provision. The booklet states:

9

Turning to the facts of the case, the record shows that Schneider could not prove her entitlement to the exception because she stopped working in February 1993, less than six months after her coverage began. Thus, we conclude that there is substantial evidence to support the Board's determination that Schneider's case did not fall within the exception to the preexisting-condition exclusion.[7]

**D. Waiver**

Schneider also contends that she is entitled to a waiver of the preexisting-condition exclusion. The following policy provision explains the waiver:

> Benefits are not payable if, during the first six months your insurance is initially in effect, you become disabled by an Injury or Sickness for which you received some form of medical treatment (including the taking of prescribed medication) during the three-month period immediately before your disability insurance began. This does not apply if, *while covered for disability insurance*, you have been Actively at Work six consecutive months, or after your disability insurance has been in force continuously for 12 months.

(Emphasis added.)

---

[7] In another argument, Schneider cites *Glover v. National Insurance Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977), for the proposition that courts should strictly construe ambiguous policy language against the insurer and contends that the exception provision is ambiguous and should be strictly construed against ERS. Although the rule stated in *Glover* applies in cases involving private insurers, we apply a different standard in cases involving a state agency. As we have previously stated, the Board has the power to determine as a matter of law the meaning of its chosen words, and the Board's interpretation of policy language is entitled to judicial respect regarding any uncertainty. *See* Tex. Ins. Code Ann. § 1551.352 (West 2007); *Board of Trs. of Employees Ret. Sys. of Tex. v. Benge*, 942 S.W.2d 742, 744 (Tex. App.—Austin 1997, writ denied). Because the Board's ruling is presumptively valid, we need only determine that the Board's interpretation is a reasonable one in order to uphold the ruling. *See Benge*, 942 S.W.2d at 744.

> [The preexisting-condition] exclusion shall be waived for the initial coverage of any Employee of an institution of higher education who was . . . Actively at Work for six consecutive months immediately prior to September 1, 1992, unless the Employee was covered under such insurance for less than 12 continuous months or who was not Actively at Work for six consecutive months immediately prior to September 1, 1992, in which event this exclusion shall apply for the remainder of the 6-month or 12-month period.

The Board determined that the waiver did not apply to Schneider's case because Schneider offered no evidence of the amount of time she was "actively at work." Schneider's insurance policy defines "actively at work" as:

> the active expenditure of time and energy in the service of the Employer . . . An Employee will be considered to be on Active Duty on each day of a regular paid vacation or regular paid sick leave, or on a regular nonworking day, provide [sic] he was on [sic] Actively at Work on the last preceding working day.

Schneider argues that her testimony that she worked continuously from 1985 to 1993 establishes that she was actively at work for six consecutive months before September 1, 1992. In support of her position, Schneider refers to a letter from ERS's assistant general counsel to the ALJ stating that Schneider was entitled to the waiver based on her years of employment. Although Schneider attached the letter to a post-submission communication sent to this court, we have not located the letter in the record, and Schneider does not provide a citation to the record. Thus, we need not consider the letter. *See* Tex. R. App. P. 38.1(h) (requiring appropriate citation to record). However, even if we considered the letter, it would not affect our decision. First, such an opinion is not binding on our Court. Second, although both the letter and Schneider's testimony establish that

11

Schneider was employed by HCC for six months immediately prior to September 1, 1992, we agree with the Board that Schneider offered no evidence establishing that she was "actively at work" within the meaning of her policy during that time.

In fact, much of the evidence in the record suggests the opposite. Medical records indicate that Schneider had surgery on her right wrist on May 15, 1992. Although she testified that she could still work with no restrictions after the surgery, she did not provide evidence showing when she returned to work. A doctor's note written on August 12, 1992, indicates that she still had not returned to work by then. The note states that Schneider "still ha[d] some achy pain in her hands," and that although her hands were better, she was "very, very concerned about restarting work." Another doctor's note from November 2, 1992, states that Schneider said she was interpreting only "one or two hours a week." Schneider did not offer evidence showing whether she took paid vacation time or sick leave in the months after the surgery. In her brief, Schneider argues that she did not work during the summer months of 1992 because HCC did not call her to work, and thus the days were "regular non-working days." However, we have not located any evidence of this in the record, and Schneider does not cite to the record in support of her position. She also does not cite to any authority that would support her contention. Thus, we do not consider this argument. *See* Tex. R. App. P. 38.1(h).

Considering the evidence showing that Schneider was not "actively at work" during the six months immediately prior to September 1, 1992, and the lack of evidence to the contrary, we conclude that substantial evidence supports the Board's determination that Schneider was not entitled to a waiver of the preexisting-condition exclusion.[8]

---

[8] In another issue, Schneider contends that the ALJ erred in not liberally construing the provisions of her insurance policy so as to carry out the remedial purposes of the Texas Insurance

**CONCLUSION**

Because the ALJ imposed the proper burden of proof on both parties at the hearing, and because Schneider failed to prove the applicability of the exception to or waiver of the preexisting-condition exclusion, we affirm the district court's judgment.

_____

David Puryear, Justice

Before Justices B.A. Smith, Puryear and Waldrop;
   Justice B.A. Smith Not Participating

Affirmed

Filed:   April 3, 2009

---

Code.  Although she cites to *Vail v. Texas Farm Bureau Mutual Insurance Company*, 754 S.W.2d 129, 132 (Tex. 1988) for the general rule that the insurance code should be liberally construed, she does not cite to any authority for the proposition that the provisions of *an insurance policy* should also be so construed.  When the Texas Supreme Court applies a liberal construction with regard to a statute, it does so to the provisions of the statute itself. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 350 (Tex. 2008) (applying liberal construction to Workers' Compensation Act); *Kennedy v. Sale*, 689 S.W.2d 890, 892 (Tex. 1985) (applying liberal construction to Deceptive Trade Practices Act).  Accordingly, we overrule this issue.