Jerry D. ANGERMAN et al., Appellants,

v.

Robert E. STEWART et al., Appellees.

No. 12964.

Court of Civil Appeals of Texas, Austin.

Aug. 1, 1979.

John B. Selman, Mark J. Silverstone, Sneed, Vine, Wilkerson, Selman & Perry, Austin, for appellants.

Mark White, Atty. Gen., Thomas A. Rutledge, Asst. Atty. Gen., Austin, for State Banking Board of Texas.

Earl L. Yeakel, III, Adrian M. Overstreet, Jr., Kammerman, Yeakel & Overstreet, Austin, for Bank of Austin.

SHANNON, Justice.

Appellants Jerry D. Angerman and others filed an application with the State Banking Board for a charter to operate a bank, to be known as the Sam Houston Bank, in Austin, Travis County, Texas. The Board after hearing entered an order denying the application.

Appellants filed suit in the district court of Travis County to set aside the Board's order. The district court entered judgment affirming the Board's order. We will affirm that judgment.

Appellants' first point of error is that the judgment approving the administrative order is erroneous in that the Board entered its order more than ninety days after May 18, 1977, the date the hearing was closed.

The Administrative Procedure and Texas Register Act, Tex.Rev.Civ.Stat.Ann. Art. 6252–13a, § 16(d) (Supp.1978), provides:

"(d) The final decision or order must be rendered within 60 days after the date the hearing is finally closed. In a contested case heard by other than a majori-

ty of the officials of an agency, the agency may prescribe a longer period of time within which the final order or decision of the agency shall be issued. The extension, if so prescribed, shall be announced at the conclusion of the hearing."

At the close of the hearing, the hearing officer announced that the time for rendition of the order was extended from sixty to ninety days. The Board's order, however, was signed one hundred and four days after the close of the hearing.

Appellants argue that compliance with § 16(d) is mandatory and that the Board's order is void because it was signed fourteen days beyond the time limit announced by the examiner. Appellants' argument is contrary to the holding of the Waco Court of Civil Appeals in *Lampasas Federal Savings and Loan Association v. Lewis*, 558 S.W.2d 913 (Tex.Civ.App.1977, no writ). The Court held in *Lampasas* that § 16(d) is directory. See also *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307 (Tex. 1976). Contrary to appellants' claim, *Houston Mobilfone, Inc. v. P. U. C.*, 565 S.W.2d 323 (Tex.Civ.App.1978, no writ), is not controlling. Section 16(d) was not involved in *Mobilfone*.

■ Appellants' second point is that the district court erred in affirming the Board's order because the First Deputy Treasurer voted in place of the Treasurer although the Treasurer was present when the vote was taken.

Jesse James, then Treasurer, was present at the meeting of the Board during the taking of the vote on appellants' charter application. James did not vote on appellants' application and instead, Morris Steven, First Deputy Treasurer, voted in place of James. No explanation for the substitution appears in the record. The vote was unanimous to deny the application.

The duties of the State Banking Board are found in the Texas Banking Code Ann. Art. 342–101 *et seq.* (1973). Article 342–115, subd. 3(b) and (d) provide in part as follows:

"(b) . . . The decision of the Board shall be evidenced in the minutes by the vote of each Board member in respect to each of the five statutory requisites for issuance of a bank charter, and no member shall abstain from voting unless he shall be disqualified for some ethical or personal reason, which ground of disqualification shall be stated in the record."

. . . . .

"(d) When either the State Treasurer or Commissioner is unable to personally attend an official meeting of the Board, the respective first deputy of such member may appear and vote in his stead, provided that the Board rules shall prescribe the deputy by name and title who is so authorized, and provided further, that two such deputies may not both sit as substitute members of the Board at the same meeting."

Because the Treasurer was in attendance at the official meeting of the Board, the Board did not act in compliance with Art. 342–115, subd. 3(d) in permitting the First Deputy Treasurer to vote on appellants' application in place of the Treasurer.

Texas Banking Code Ann. Art. 342–305A and D provide in part:

"A. Applications for a State bank charter shall be granted only upon good and sufficient proof that all of the following conditions presently exist:

(1) A public necessity exists for the proposed bank;

(2) The proposed capital structure is adequate;

(3) The volume of business in the community where such proposed bank is to be established is such as to indicate profitable operation of the proposed bank;

(4) The proposed officers and directors have sufficient banking experience, ability and standing to render success of the proposed bank probable; and

(5) The applicants are acting in good faith.

The burden to establish said conditions shall be upon the applicants."

. . . . .

"D. Upon filing of the application, the Commissioner shall promptly set the time and place for public hearing of the application for charter, giving the applicants and such other banks in the same trade area reasonable notice thereof. After full and public hearing the Board shall vote and determine whether the necessary conditions set out in Section A above have been established. Should the Board, or a majority of the Board, determine all of the said conditions affirmatively, then the application shall be approved; if not, then the application shall be denied. If approved, and when the Commissioner receives satisfactory evidence that the capital has been paid in full in cash, the Commissioner shall deliver to the incorporators a certified copy of the Articles of Association, and the bank shall come into corporate existence. Provided however, that the State Banking Board may make its approval of any application conditional, and in such event shall set out such condition in the resolution granting the charter, and the Commissioner shall not deliver the certified copy of the Articles of Association until such condition has been met, after which the Commissioner shall in writing inform the State Banking Board as to compliance with such condition and delivery of the Articles of Association."

Appellants' argument that the First Deputy Treasurer's vote, under the circumstances, invalidates the order is without merit. The rule is set out in 73 C.J.S. *Public Administrative Bodies and Procedure* § 21 (1951):

"Although there is authority to the contrary, as a general rule, in the absence of a statute providing otherwise, where official authority is conferred on an administrative body composed of three or more members, such authority may be exercised by less than all the members, provided all had notice or an opportunity to be present, as discussed supra § 20. The number requisite to effective action

may be, and frequently is, fixed by statute, and action by a majority of the members of the body or of a quorum is necessary and sufficient. Unless so provided by statute, the authority may not be exercised by a single member of such body, or less than a majority. The legal effect of action taken by the requisite number of members, although less than all, is the same as though all had supported the action taken, and the mere fact that they permit an unauthorized person to act with them will not invalidate the action taken."

By the enactment of Art. 342–115, subd. 3(b) and (d) the legislature probably intended to discourage abstention and to authorize substitute members to vote in order to avoid stalemates where the vote might otherwise result in a one-to-one tie.

In the case on appeal, although the First Deputy Treasurer improperly voted in place of the Treasurer, the purpose of the act was not thwarted. The vote was unanimous and no matter how the First Deputy Treasurer voted, or how the Treasurer would have voted, the majority vote would have been to deny the application.[1]

Accordingly, the noncompliance with Art. 342–115, subd. 3(d), though error, was harmless in that it did not result in the entry of an order different from one that would have been entered if Art. 342–115, subd. 3(d) had been complied with. Point of error two is overruled.

Appellants' fourth point is that the judgment affirming the Board's order was erroneous in that the Board's findings (1) that a public necessity does not exist for the proposed bank and (2) that the volume of business in the community to be served is not such as to indicate a profitable operation, are not supported by substantial evidence.

The Board's refusal of appellants' application was grounded upon its negative findings relating to Texas Banking Code Ann. Art. 342–305, subdivision A(1) and (3), above set out. The district court concluded

---

1. The Treasurer attended the meeting at which the applicants' motion for rehearing was considered, and he cast his vote to overrule the motion.

that the negative findings of the Board were supported by substantial evidence.

■ An appeal from an order of the Board is, of course, governed by the substantial evidence rule. *Chemical Bank & Trust Company v. Falkner*, 369 S.W.2d 427 (Tex.1963). A statement of the law relating to judicial review of agency orders is found in a recent opinion of this Court, *Mutual Building and Loan Association v. Lewis*, 572 S.W.2d 771 (Tex.Civ.App.1978, no writ), and need not be repeated in this opinion.

■ The proposed bank was to be located in the Bruce Towers Building located just east of Interstate 35 on the access road in south Austin. The Board characterized access to that building bluntly, but fairly, as "mediocre." A bank's accessibility is a factor in considering whether its operation will be profitable. *State Bank Bd. v. Proposed Cent. Pk. Bank of Dallas*, 522 S.W.2d 717 (Tex.Civ.App.1975, writ ref'd n. r. e.).

The record reflects undisputed economic growth in Travis County and in Austin in recent years. There was not evidence, however, showing what areas in the county and city were experiencing most of the growth. With respect to growth in population, the evidence was that there had been very little increase within the past few years in the number of persons residing in the immediate area of the location of the proposed bank. East of the site of the proposed bank there are many apartments that house mostly students. Deposit potential from most students is very limited. To the east and southeast there are large tracts of undeveloped land.

In response to the growth in the county as a whole, as many as ten new banks have been established in the county since 1968, an increase of one hundred percent. Within a two and a half mile radius of the site of the proposed bank there are eight banks and several savings and loan institutions. New banks have been chartered in Travis County more rapidly than the population and economic growth have increased.

One factor in determining whether there is a public need for a bank and whether the proposed bank will operate profitably is the level of demand deposits of individuals, partnerships, and corporations. There was evidence that from 1970 to 1976 such demand deposits consistently decreased as a percentage of total deposits in the banks in Travis County.

Some doubt was cast upon the economic conditions in the county by evidence that showed an increased unemployment rate between 1974 and 1977. In addition, the average weekly wage in the county in 1976 was less than the state-wide average weekly wage. Although per capita income increased in Travis County, the county has fallen behind the per capita income for the rest of the state in recent years.

In the case at bar the Board refused to find affirmatively with respect to subsections (1) and (3), but instead found there was no public necessity for the proposed bank and that the volume of business in the community was not such as to indicate a profitable operation of the proposed bank. We hold that the findings complained of were supported by substantial evidence, and further hold that the evidence does not so conclusively require affirmative findings that the refusal to make them was arbitrary or capricious. *Gerst v. Cain*, 388 S.W.2d 168 (Tex.1965).

Point of error three is that the judgment affirming the Board's order was erroneous because (1) the order is based on evidence not introduced at the hearing or officially noticed and (2) the Board's findings of fact are not accompanied with a concise and explicit statement of the underlying facts supporting those findings. The point is without merit and is overruled.

The judgment is affirmed.