**EMPLOYEES RETIREMENT SYSTEM OF TEXAS; Blue Cross and Blue Shield; and Group Life & Health Insurance Company, Inc., Appellants,**

v.

**Selena D. CASH, Appellee.**

No. 03–94–00483–CV.

Court of Appeals of Texas, Austin.

Aug. 30, 1995.

Rehearing Overruled Oct. 11, 1995.

---

Jeffrey S. Davis, Maroney, Crowley & Bankston, L.L.P., Austin, for Blue Cross & Blue Shield and Group Life & Health Ins. Co.

Dan Morales, Attorney General, Roxanne Caperton, Assistant Attorney General, General Counsel Division, Austin, for Employees Retirement System of Texas.

Claude E. Ducloux, Hill, Ducloux, Carnes & Clark, Austin, for Selena D. Cash.

Before POWERS, JONES and KIDD, JJ.

JONES, Justice.

Appellants Blue Cross and Blue Shield and Group Life & Health Insurance Company, Inc. ("the insurers") denied accidental death benefits to Selena Cash, appellee. Appellant the Employees Retirement System of Texas ("ERS") upheld the insurers' denial of benefits on the grounds that: (1) the insured's drug overdose death was not accidental; and (2) the policies' "felonious activity" exclusions precluded benefits. Cash sued in district court for judicial review of the ERS's decision. Concluding that the ERS decision was not supported by substantial evidence on either of the stated bases, the district court reversed the ERS's order. We will reverse

the district-court judgment and affirm the ERS's order.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 1, 1990, Selena Cash's husband, Marion Marshall, died of methadone and cocaine intoxication. As a state employee, Marshall was enrolled in the ERS Uniform Group Insurance Program, which included an "accidental death and dismemberment" policy and a "voluntary accident insurance" policy. Following Marshall's death, Cash filed a claim with Group Life & Health Company, a Blue Cross and Blue Shield subsidiary, for accidental death benefits under the policies. The insurers denied her claim on the basis that the death was not accidental and that the policies' felonious-activity exclusions precluded coverage. The Executive Director of ERS upheld the denial.

Cash appealed this decision to the ERS Board of Trustees. The appeal was referred to the State Office of Administrative Hearings for a contested-case hearing. After the hearing, the administrative law judge recommended to the ERS Trustees that Cash's appeal be granted. The Trustees declined to adopt the ALJ's proposal for decision and adopted their own findings of fact and conclusions of law denying the claim. Cash then brought this suit in district court for judicial review of the Trustees' decision.[1]

The district court reversed the Trustees' decision on the grounds that: (1) the administrative record did not contain substantial evidence to support the ERS's finding that the insured's death was not accidental; and (2) the ERS erred in applying the felony exclusion because, as a matter of law, mere presence of illegal drugs in the blood does not constitute substantial evidence that the

insured was engaged in felonious conduct causing his death. ERS and the insurers (collectively "Appellants") challenge both of these conclusions. Cash also raises one cross-point concerning attorney's fees.

## FELONIOUS–ACTIVITY EXCLUSION

The insurance policies in question contained the following exclusion: "This Supplementary Contract does not cover loss caused by or resulting from any one or more of the following: ... (F) Loss occurring while engaged in any felonious activity." Appellants contend that the trial court erred in finding that there was not substantial evidence to support the ERS's decision that the insured's death was caused by, or resulted from, the insured's engaging in felonious activity. We agree.

Our supreme court has described the burdens of proof and presumptions to be applied when an insurer invokes a felony exclusion. *See Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 559 (Tex.1976). Once the exclusion is raised by the insurer and supported by the introduction of "some evidence," the burden of proof rests on the beneficiary to show that the felonious-activity exclusion is not applicable: "Even though the burden is still on the beneficiary to prove that insured was not engaged in criminal conduct which led to his death, he must be presumed innocent of any criminal conduct until *some evidence to the contrary* is produced." *Id.* (emphasis added).

Applying *Heyward* to this case, when the insurers invoked the felony exclusion, Cash had the burden of proof to show that the exclusion was not applicable. However, the deceased is presumed innocent of felonious conduct, unless the insurers produce

---

1. We note that the Texas Employees Uniform Group Insurance Benefits Act, as amended, provides for an appeal to district court under substantial-evidence review from an ERS Trustees' decision on payment of benefit claims from life, accident, and health insurance coverage. *See* Act of May 9, 1985, 69th Leg., R.S., ch. 155, sec. 1, § 4B, 1985 Tex.Gen.Laws 685, 686 (codified at Tex.Ins.Code Ann. art. 3.50–2, § 4B (West Supp. 1995)); *see also id.,* sec. 2(b)(4), 1985 Tex.Gen. Laws at 687. This case is distinguishable, therefore, from our recent decision in *Employees Re-* *tirement System of Texas v. Foy,* 896 S.W.2d 314 (Tex.App.—Austin 1995, writ denied), where we held that the district court lacked jurisdiction over an appeal from the ERS concerning *disability retirement benefits.* The ERS's authority over disability retirement benefits is controlled by a separate act now codified in chapter 814 of the Texas Government Code. *See* Tex.Gov't Code Ann. §§ 814.201.–.603 (West 1994). The legislature has not specifically provided for judicial review of ERS decisions concerning those benefits.

some evidence to the contrary. Thus our inquiry is focused on: (1) whether there is some evidence of felonious conduct to overcome the innocence presumption and, if so, (2) whether Cash met her burden of proof that the felonious-activity exclusion was inapplicable.

Given the posture of this administrative appeal, both of these questions must be analyzed through the prism of substantial-evidence review. In conducting a substantial-evidence review, we must determine whether the evidence as a whole is such that reasonable minds could have reached the conclusion the agency must have reached in order to take the disputed action. *Texas State Bd. of Dental Examiners v. Sizemore*, 759 S.W.2d 114, 116 (Tex.1988), *cert. denied*, 490 U.S. 1080, 109 S.Ct. 2100, 104 L.Ed.2d 662 (1989); *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex.1984). We may not substitute our judgment for that of the agency and may consider only the record on which the agency based its decision. *Sizemore*, 759 S.W.2d at 116. If substantial evidence would support either affirmative or negative findings, we must resolve any conflicts in favor of the agency decision and uphold the decision. *Auto Convoy Co. v. Railroad Comm'n*, 507 S.W.2d 718, 722 (Tex.1974).

The ERS made the following findings: at the time of death, the insured had .3 milligrams of methadone and .01 milligrams of cocaine per liter of blood in his body; the insured died as a result of methadone and cocaine intoxication; possession of either cocaine or methadone, without a prescription, is a felony; preceding ingestion, the insured possessed these illegal drugs, thereby engaging in a felony; Cash presented no evidence that the drug ingestion was involuntary or accidental. Consequently, the ERS concluded that by a preponderance of the evidence the insured was engaged in a felony that resulted in his death, thereby falling within the felonious-activity exclusion.

Our review of the agency record under a substantial-evidence review reveals ample evidence to support these findings. The death certificate listed the immediate cause of death as "Methadone and cocaine intoxi-

cation." No additional underlying causes were noted. Under the heading, "Describe How Injury Occurred," the death certificate stated: "Drug overdose." The Medical Examiner's report concluded that the insured "came to his death as a result of methadone and cocaine intoxication." An addendum to the report described the manner of death as "Drug overdose. By his own hand." The Medical Examiner's toxicological findings showed concentrations of .01 milligrams of cocaine and .3 milligrams of methadone per liter of the deceased's blood. In fact, there is no dispute that the insured's death was the result of a methadone/cocaine overdose.

The controversy here is whether the uncontroverted evidence of illegal drugs in the deceased's bloodstream is "some evidence" that before his death he possessed controlled substances, a felonious activity. If this were a criminal case, the state's burden would be clear. To establish unlawful possession of a controlled substance, the state must prove beyond a reasonable doubt that the accused (1) exercised care, control, and management over the contraband; and (2) knew the matter possessed was contraband. *Joseph v. State*, 897 S.W.2d 374, 376 (Tex.Crim.App. 1995); *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995); *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App.1988). Because of this heavy burden, no Texas court has held that a person could be convicted of possession of narcotics solely because of residual drugs found in his body. *See Jackson v. State*, 833 S.W.2d 220, 223 (Tex.App.— Houston [14th Dist.] 1992, pet. ref'd). In *Jackson*, the results of a test for drugs in the body were held not to satisfy, without more, the elements of possession. *Id.* It was thought that under such circumstances neither control nor knowledge could be proved beyond a reasonable doubt. *Id.* at 226. Once the drugs are in the bloodstream, the accused arguably lacks control over them. Likewise, the drugs might have been taken involuntarily or accidentally, thereby negating knowing possession. In the present case, the trial court relied on *Jackson* in concluding that evidence of a controlled substance in the body does not constitute "some evidence" of a felony to overcome the presumption of

innocence. Cash continues to assert that the reasoning employed in *Jackson* should control the outcome here. We disagree.

In *Jackson*, the court of appeals reversed a defendant's possession conviction that was based on the presence of .04 milligrams of cocaine in the liver of her stillborn baby. *Id.* at 222, 226. *Jackson* does not, however, stand for the proposition that the presence of drugs in the bloodstream is, as a matter of law, *no evidence* of prior possession. Indeed, a careful reading of *Jackson* shows that the court felt that although bloodstream presence *is some evidence* of prior possession, additional evidence would be necessary for the state to convict beyond a reasonable doubt. *Id.* at 223–26. The out-of-state authorities on which *Jackson* relied expressly so hold. *See State v. Flinchpaugh*, 232 Kan. 831, 659 P.2d 208, 212 (1983) (presence of drugs in bloodstream is circumstantial evidence of prior possession, but not sufficient by itself to establish guilt beyond reasonable doubt); *State v. Vorm*, 570 N.E.2d 109, 110 (Ind.Ct.App.1991) (presence of cocaine in urine sample is circumstantial evidence of possession, but not enough, without additional evidence, to prove possession beyond reasonable doubt); *State v. Lewis*, 394 N.W.2d 212, 217 (Minn.Ct.App.1986) (presence of controlled substance in urine not sufficient to prove prior possession beyond reasonable doubt, absent corroborating evidence).

Thus, the rule in Texas appears to be that the presence of drugs in the bloodstream is circumstantial evidence of prior possession, but that additional evidence is required to convict beyond a reasonable doubt. *See Nelson v. State*, 881 S.W.2d 97, 100 (Tex.App.— Houston [1st Dist.] 1994, pet. ref'd) (evidence sufficient to sustain conviction where urine tested positive for cocaine, officer saw accused cup his hand to his mouth, and pieces of chips of unidentified white rock were visible on accused's teeth). Clearly, however, it is the beyond-a-reasonable-doubt burden inherent in a criminal prosecution that restricts conviction based solely on bloodstream presence. In the present case, the insurers are

not surrogates for the state and do not have the state's criminal burden. Likewise, the ERS Trustees did not have to be convinced beyond a reasonable doubt. Rather, under *Heyward* there must only be "some evidence" that the insured was engaged in a felony causing his death. We believe the undisputed fact that the insured died of an overdose of illegal drugs is some evidence, albeit circumstantial, of prior possession.

With the presence of some evidence tending to show that Marshall's participation in felonious activity caused his death, the presumption of innocence fades, and under the *Heyward* rule the burden shifts to Cash. In order to meet this burden, Cash was required under the circumstances of this case to show either that the drugs were not contraband or that they were somehow not knowingly possessed because of accidental or involuntary ingestion. She did neither.

Cash presented no evidence that the chemicals were not illegal contraband. It is undisputed that possession of either cocaine or methadone without a valid prescription is a felony offense. *See* Tex.Health & Safety Code Ann. § 481.102 (West 1992) (listing both cocaine and methadone in Penalty Group 1); *id.* § 481.115 (making possession of substance in Penalty Group 1 a felony offense). Cash did not argue or present any evidence that her husband held a valid prescription for methadone, as was her burden. *See* Health & Safety Code § 481.184(a) ("A person claiming the benefit of an exemption or exception has the burden of going forward with the evidence with respect to the exemption or exception."); *Rodriquez v. State*, 561 S.W.2d 4, 4–5 (Tex.Crim.App.1978) (prescription qualification for heroin is exception or exemption placing burden of proof on claimant); *accord Threlkeld v. State*, 558 S.W.2d 472, 473 (Tex.Crim.App.1977) (claimant has burden of proving prescription qualification for cocaine). The combined amount of these drugs was measurable[2] and hence sufficient to uphold a possession offense. *Johnson v. State*, 843 S.W.2d 238, 239 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd) ("Possession

---

2. The deceased had a combined amount of .31 milligrams of methadone and cocaine per liter of blood. Since the average person has between

five and eight liters of blood, the deceased had between 1.55 and 2.48 milligrams of controlled substances in his body.

of minute amounts of a controlled substance is sufficient to sustain a conviction if the amount possessed is capable of being measured."); *see Ortega v. State,* 861 S.W.2d 91, 95 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd) (affirming conviction of possession of 1.1 milligrams of cocaine); *Mayes v. State,* 831 S.W.2d 5, 6 (Tex.App.—Houston [1st Dist.] 1992, no pet.) (.2 milligrams of cocaine); *Jackson v. State,* 807 S.W.2d 387, 388–89 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd) (1.2 milligrams of cocaine); *Chavez v. State,* 768 S.W.2d 366, 367–68 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd) (.5 milligrams of cocaine); *cf. King,* 895 S.W.2d at 703 (noting if amount is so small it cannot be measured, other evidence is necessary to show knowledgeable possession); *Shults v. State,* 575 S.W.2d 29, 30 (Tex.Crim.App. 1979).

Likewise, Cash presented no evidence that the deceased ingested the drugs involuntarily or accidentally. Cash did introduce evidence that no additional drugs or drug paraphernalia were found at the scene. The record also contains testimony by David Botsford, an expert in criminal law, that the presence of drugs in the blood was insufficient to prosecute under the criminal statutes, but he admitted that such presence was circumstantial evidence that at some point the deceased had taken the drugs that resulted in his death.[3] Cash also introduced evidence of other insurance policies in which a specific drug overdose exception exists, and she showed that Group Life & Health subsequently amended its policy to include such an exception.[4]

After reviewing this evidence, the ERS concluded that because of the presence of illegal drugs in the bloodstream and a complete absence of evidence of involuntary or accidental ingestion, the insured was engaged in felonious activity—possession of a controlled substance—that led to his death.

Given that it was Cash's burden to negate the felony exception, and considering the standard by which we review the ERS's decision, we hold that the agency decision is supported by substantial evidence. We therefore sustain Appellants' point of error concerning the felonious-activity exception.[5]

## CONCLUSION

We reverse the trial-court judgment and render judgment upholding the ERS Trustees' decision denying accidental death benefits based on the felonious-activity exclusion.

---

3. This contention is, of course, consistent with our discussion of *Jackson.* Even if bloodstream presence is not sufficient by itself to prove prior possession beyond a reasonable doubt, it is still some evidence of prior possession.

4. We are not persuaded that this subsequent policy amendment concerning drug overdoses precludes, as a matter of law, application of the

felony exclusion in this case. This later contract change is consistent with policy clarification and does not prohibit application of the felony exclusion.

5. In light of our disposition of this point of error, we do not address Appellants' additional challenges to the judgment or Cash's cross-point for attorney's fees.