Deborah NOBLES, Appellant,

v.

EMPLOYEES RETIREMENT SYSTEM OF TEXAS; and Fort Dearborn Life Insurance Company, Successor in Interest to Group Life and Health Insurance Co., Appellees.

No. 03–00–00769–CV.

Court of Appeals of Texas, Austin.

July 26, 2001.

---

J. Bruce Bennett, Austin, for appellant.

Raymond C. Winter, Asst. Atty. Gen., Austin, for E.R.S.

Before Justices KIDD, B.A. SMITH, and PURYEAR.

KIDD, Justice.

Deborah Nobles ("Nobles") appeals the trial-court judgment affirming a final order issued by the Employees Retirement System of Texas ("ERS") that denied her insurance claim for accidental death benefits. Nobles asserts that ERS erroneously

imposed the burden of negating a policy exclusion on her. We will affirm.

## BACKGROUND

Nobles is an employee of the Texas Department of Criminal Justice. As a state employee, she is eligible for the Uniform Group Insurance Program ("the Program"). The insurer for that Program is currently Fort Dearborn Life Insurance Company.[1] Prior to her husband's death, Nobles enrolled him in the Program. As part of her insurance program, Nobles elected dependent accidental death and dismemberment ("ADD") and dependent voluntary accident insurance ("VAI").

On November 2, 1996, Nobles, her husband Chris, and their son Greg, attended a Halloween party. Chris drove the family to the party in his pickup truck. At the party, they met Chris's friend, Juston McCarver. Chris and McCarver drank alcoholic beverages at the party, but Chris later drove the family home without incident; McCarver accompanied them in the truck. Once home, the entire family went inside the house; however, Chris rejoined McCarver outside to return to the party. The two men left the house in Chris's truck, which he had recently modified to enhance engine performance and increase speed. On the way back to the party, the truck left the highway and eventually landed upside down in a creek, killing both men.

Department of Public Safety Sergeant Skylor Hearn, who investigated the accident scene, found Chris's body in the creek and McCarver's body inside the truck, lying across the cab with a foot pinned between the dashboard and windshield on the passenger's side. The passenger's door was open; the driver's door was closed. Hearn's initial report indicated that he could not discern who had been driving. Furthermore, there were no witnesses to verify who was driving; Nobles had not watched the men leave. Autopsies revealed that both men were legally intoxicated at the time of the accident. Chris's blood-alcohol level was .14; McCarver's was .25. A few months later, Hearn's supplemental accident report listed Chris as the driver.

Following Chris's death, Group Life issued payment of $5000 in dependent term life benefits to Nobles. She also filed a claim for $5000 in ADD benefits and $100,000 in VAI benefits. Group Life denied the claim based on a policy term excluding coverage for a death occurring while the insured dependent is engaged in any felonious activity ("the felony exclusion"). Group Life asserted that there was evidence Chris had caused McCarver's death by driving while intoxicated, a second-degree felony under the Texas Penal Code.[2] See Tex. Penal Code Ann. § 49.08 (West Supp.2001).

Nobles requested that ERS review the denial of her claim. The acting director of benefit contracts denied the claim once

---

1. Group Life and Health Insurance Company ("Group Life") was the insurer when Nobles's claim arose. Group Life has since merged into Fort Dearborn Life Insurance Company. For clarity, we will refer to Group Life throughout this opinion.

2. The relevant Penal Code provision states, in part:

§ 49.08 Intoxication Manslaughter

(a) A person commits an offense if the person:
 (1) operates a motor vehicle in a public place ...; and
 (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake.
(b) An offense under this section is a felony of the second degree.
Tex. Pen.Code Ann. § 49.08 (West Supp. 2001).

more, and Nobles sought review by the Board of Trustees. The Board referred the case to an administrative law judge ("ALJ") for an evidentiary hearing. The ALJ issued findings of fact, conclusions of law, and a proposal for decision that the claim be denied. The Board adopted the findings, conclusions, and proposal in a final order. Nobles's motion for rehearing was overruled by operation of law.

Nobles sought judicial review of the ERS final order in Travis County district court. The district court rendered judgment in favor of ERS. By eleven issues, Nobles asserts that ERS violated a provision of the Texas Insurance Code and challenges findings of fact and conclusions of law incorporated in the final order denying her claim.

### THE CONTROVERSY

■ Nobles challenges the finding that Chris was driving at the time of the accident and the conclusion that, had he survived, he could have been subjected to second-degree felony charges for intoxication manslaughter.[3] Under section 21.58(b) of the Texas Insurance Code, the insurer has the burden of proof regarding any exception to coverage, such as the felony exclusion. Tex. Ins.Code Ann. art. 21.58(b) (West Supp.2001). Nobles asserts that ERS erroneously required her to prove the inapplicability of the felony exclusion—to prove that Chris was not driving at the time of the accident.

In formulating the proposal for decision, the ALJ explicitly cited our decision in *Employees Retirement System v. Cash*, 906 S.W.2d 204 (Tex.App.—Austin 1995, writ denied). That case stands for the proposition that when the insurer presents "some evidence" that the insured decedent was engaged in a felony causing his death, the presumption of his innocence disappears and the burden shifts to the claimant to negate the applicability of the felony exclusion. *Id.* at 208. Approximately ten months after the claim accrued in the *Cash* case, article 21.58 was added to the Texas Insurance Code. Article 21.58, which was not raised by either party in *Cash*, provides:

### Art. 21.58. Burden of Proof and Pleading

(a) This article applies to any insurer doing business in this state, including:

. . . .

(19) ... It is intended that this article apply to all insurance companies doing business in this state, regardless of form and however organized. . . .

(b) In any suit to recover under a contract of insurance, the insurer has the burden of proof as to any avoidance or affirmative defense that must be affirmatively pleaded under the Texas Rules of Civil Procedure. Any language of exclusion in the policy and any exception to coverage claimed by the insurer constitutes an avoidance or an affirmative defense.

*Id.* art. 21.58(a), (b). Thus, under *Cash*, the insurer had the burden to plead a policy exclusion and present "some evidence" of its applicability. Article 21.58 changed this burden so that the insurer has to plead *and prove*, by a preponderance of the evidence, the exclusion. *See id.*

---

**3.** Nobles concedes that had Chris been driving, the felony exclusion clause would apply. Had Chris been the only occupant of the truck, even though intoxicated, his sole death would not trigger that clause. Ironically, the death of McCarver, a complete stranger to the ERS policy, results in application of the felony exclusion clause.

## DISCUSSION

### Burden of Proof

█ It is undisputed that prior to the enactment of article 21.58 an insurer only needed to plead and present "some evidence" of the applicability of an exclusion in a life insurance policy. *Cash*, 906 S.W.2d at 208. Since September 1, 1991, however, insurers are required to both plead *and prove* the applicability of an exclusion. Nobles argues that article 21.58 applies not only in courts of law, but also in contested-case hearings before the Board. ERS, on the other hand, argues that article 21.58 does not apply to disputes arising under the Texas Employees Uniform Group Insurance Benefits Act ("the Act").[4] *See* Tex. Ins.Code Ann. art. 3.50–2 (West 1981 & Supp.2001). ERS argues that under "good" case law-admittedly *not* good in a court of law, but still applied by the Board in contested-case hearings-the burden of proof was properly shifted to Nobles to prove that the felony exclusion was inapplicable. *See Republic Nat'l Life Ins. Co. v. Heyward*, 536 S.W.2d 549, 559 (Tex.1976); *Cash*, 906 S.W.2d at 208.

ERS relies on a case from this Court holding that because the Act did not authorize the Board to grant the claimant's attorneys' fees, and the Act was the claimant's *exclusive remedy*, attorneys' fees were not recoverable under another provision in the Insurance Code. *Butler v. Group Life & Health Ins. Co.*, 962 S.W.2d

296, 301 (Tex.App.—Austin 1998, no pet.). From this holding, ERS extrapolates that ERS and the Program are *governed exclusively* by the Act. ERS argues that the only Insurance Code provisions it must observe are those the legislature has made expressly and explicitly applicable to the Program.[5]

The Texas legislature created the Program "to attract and retain competent and able employees by providing them and their dependents with life, accident, and health benefits coverages at least equal to those commonly provided in private industry." Tex. Ins.Code Ann. art. 3.50–2, § 2(b) (West Supp.2001). However, the Program is not identical to private insurance. A cause of action against ERS or the Program insurer is derived from statute and "statutory provisions are mandatory and exclusive and must be complied with in all respects." *Butler*, 962 S.W.2d at 301 (citation omitted). For example, a Program claimant must exhaust all administrative remedies before seeking judicial review in a court of law. Tex. Ins.Code Ann. art. 3.50–2, § 4B (West Supp.2001). However, Program benefits are not a gift the state bestows on its employees. The state competes with private industry for qualified employees and, through the Program, the state seeks to protect its investment in each permanent employee. *Id.* § 2(d). Furthermore, state employees pay monthly premiums for life, accident, and

---

**4.** The Texas legislature created the Program by enacting article 3.50–2 of the Texas Insurance Code. Tex. Ins.Code Ann. art. 3.50–2 (West 1981 & Supp.2001). Article 3.50–2 is titled the Texas Employees Uniform Group Insurance Benefits Act ("the Act"). The balance of the Insurance Code, which spans articles 1.01 through 24.22, governs a wide variety of insurance matters, for example, the administration of the State Board of Insurance and the incorporation of insurance com-

panies. The Act, which is the enabling statute for the Employees Retirement System, constitutes one discrete part of the Insurance Code.

**5.** In other words, ERS argues that although the Program is created and governed by article 3.50–2 of the Insurance Code, the Program is exempt from all other articles of the Insurance Code, unless the legislature expressly provides otherwise.

health insurance provided to them and their dependents.

ERS relies on cases in which claimants were denied the recovery of attorneys' fees, court costs, and statutory interest. Although other provisions of the Insurance Code provide for such recovery, the Act "does not authorize the Board to grant statutory interest or attorney's fees to the policyholder or beneficiary." *Butler,* 962 S.W.2d at 301; *see Beyer v. Employees Ret. Sys.,* 808 S.W.2d 622, 626 (Tex.App.— Austin 1991, writ denied). These cases are distinguishable. In *Beyer,* we examined article 3.62, which stated, in part, that *"[t]he Court* in fixing such fees shall take into consideration all benefits to the insured incident to the prosecution of the suit." Act of June 7, 1951, 52d Leg., R.S., ch. 491, § 1, 1951 Tex. Gen. Laws 868, 920, *repealed by* Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 12.01(2), 1991 Tex. Gen. Laws 939, 1133. We concluded that the article created a right to recovery only in a *court* proceeding. *Beyer,* 808 S.W.2d at 627. In *Butler,* we examined the successor to article 3.62, which stated, in part, that "such insurer shall be liable to pay the holder of the policy . . . reasonable attorney fees as may be determined by *the trier of fact."* Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 11.03(a), 1991 Tex. Gen. Laws 939, 1045 (amended 1995) (current version at Tex. Ins.Code. Ann. art. 21.55, § 6 (West Supp.2001)); *Butler,* 962 S.W.2d at 301 & n. 5. We scrutinized the changes to the article-particularly the change in nomenclature from "court" to "trier of fact"-and concluded that the amendments did not demonstrate a legislative intent to undermine *Beyer.* The Insurance Code

provisions allowing for recovery of costs, fees, and interest applied only to lawsuits brought in district court-not to administrative proceedings or judicial review of agency orders. *Butler,* 962 S.W.2d at 302. We held that a claimant's recovery of positive relief was limited to those remedies authorized by the Act-the same Act that created the Program and the cause of action in the first place. Nobles does not seek positive relief outside the Act however, she seeks a procedural protection afforded all other insurance claimants in this state.

 ERS argues that because the Act grants the Board the power to determine the methods and procedures for claims administration, the Board has the authority to adopt and implement a rule contrary to article 21.58(b).[6] *See* Tex. Ins.Code Ann. art. 3.50–2, § 4(c) (West Supp.2001). ERS directs our attention to section 67.55 of the Administrative Code—"the rule regarding burden of proof."

### § 67.55. Order of Procedure

(a) The examiner shall open the hearing and make a concise statement of its scope and purposes. . . . The party seeking relief is the party with the burden of proof throughout the proceeding.

(b) Following opening statements, if any, by both sides, the party with the burden of proof (the appellant, insured, petitioner, intervenor, or claimant) may be directed to proceed with his direct case. . . .

(c) Where the proceeding is initiated at the executive director's or the board's own call, or where several

---

**6.** We have recently decided a case in which ERS enacted a rule contrary to the Texas Insurance Code. *See Employees Ret. Sys. v. Jones,* —— S.W.3d ——, 2001 WL 359656, 2001 Tex.App. LEXIS 2337 (Tex.App.—Austin Apr. 12, 2001, no pet. h). We held that the rule was void. *Id.* at *13–14. We acknowledge that *Jones* is distinguishable from the case at bar. In *Jones,* the rule conflicted with the Act itself, the applicability of which was never in dispute.

proceedings are heard on a consolidated record, the examiner shall designate who shall open and close and at what stage intervenors shall be permitted to offer evidence.

(d) ... The party with the burden of proof (the appellant, insured, petitioner, intervenor, or claimant) shall be entitled to open and close.

34 Tex. Admin. Code § 67.55 (2001). ERS argues that in enacting this rule, the Board "determined that it was appropriate to *always* place the burden of proof on the Appellant." However, this rule, as we read it, does nothing of the kind. First, the rule indicates that following opening statements, the party bearing the burden of proof "may be directed to proceed with his direct case." *Id.* § 67.55(b). It is conceded that the claimant bears the burden of proof on his *direct* case. However, the claimant's direct case includes proof of coverage and entitlement to policy proceeds; it does not include proof negating affirmative defenses. Second, if this rule *always* places the burden of proof on the appellant, as ERS contends, then under subsection (c), when the executive director calls a hearing, there should be no need for the examiner to designate who opens and closes. The party with the burden of proof—according to ERS, *always* the appellant (insured, petitioner, intervenor, or claimant)—would *always* open and close. This rule simply does not address the question of who bears the burden of proof regarding specific, discrete issues such as exclusions or exceptions. Furthermore, ERS rules and practice reflect that statutory law, case law, and the rules of civil procedure will be applied to contested-case hearings. *See id.* § 67.1(c). The written notice of hearing Nobles received did not indicate that she would bear the burden in any way contrary to current statutory law, case law, or the rules of civil procedure.[7]

The question of whether ERS could enact a rule contradictory to article 21.58(b) is not before us. The fact remains that ERS has not done so. We hold that in contested-case hearings before the Board, pursuant to article 21.58(b), the burden is on the carrier to prove exclusions and exceptions by a preponderance of the evidence.

### Harm Analysis

■ Nobles argues that the ALJ's improper reliance on *Cash* dictates that her case be reversed and remanded to ERS for another evidentiary hearing in which the insurance company must bear the burden of proving the applicability of the felony exclusion by a preponderance of the evidence—to prove that Chris was driving the truck at the time of the accident. *See Cash*, 906 S.W.2d at 204.

We review the agency decision for reversible error; harmless error does not merit reversal. Tex.R. Civ. P. 44.1; *see also Angerman v. Stewart*, 586 S.W.2d 599, 602 (Tex.Civ.App.—Austin 1979, no writ). A showing of injury to the claimant is necessary before reversal is the appropriate remedy. Tex. Gov't Code Ann. § 2001.174(2) ("a court ... shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced"); *C.O.N.T.R.O.L. v. Sen-*

---

7. The notice of hearing stated that the issue to be determined was whether Group Life and ERS incorrectly denied the claim based on the determination that Chris's death was excluded from coverage. However, the notice also stated that "the party with the burden of proof, *usually the Appellant,* is entitled to present evidence first and to close after other parties have presented evidence." (Emphasis added). ERS maintains that this notice was in error. ERS argues that the notice was consistent with an earlier version of rule 67.55. ERS contends that the notice should have been consistent with the current rule, quoted *supra,* and should have stated that the appellant *always* has the burden of proof.

*try Envtl. L.P.,* 916 S.W.2d 677, 679 (Tex. App.—Austin 1996, writ denied).

In the proposal for decision, the ALJ purportedly relied on *Cash.*[8] Nobles therefore asserts that the ALJ assigned to her the burden of proving, by a preponderance of the evidence, that Chris was *not* driving. The party with the burden of proof usually has the privilege of opening and closing the presentation of evidence; Nobles opened and closed. However, a careful review of the record reveals that Group Life voluntary carried the burden of going forward and the burden of proof on the question of who was driving the truck at the time of the fatal accident.

Importantly, the ALJ did not recommend denial of Nobles's claim based on a *failure to find* who was driving. Rather, in the proposal for decision, the ALJ affirmatively found by a preponderance of the evidence that Chris was driving. Although the ALJ cited to *Cash,* the burden she properly placed on Nobles was only the burden to rebut Group Life's evidence that Chris was driving.[9] The ALJ found that Group Life established by a preponderance of the evidence that Chris was driving, even if the ALJ improperly referred to the *Cash* standard and improperly allowed Nobles, rather than Group Life, to open and close. Because Group Life met the burden of proof that Nobles advocates on appeal, Nobles cannot show harm in the manner in which the contested-case hearing was conducted.

### Substantial–Evidence Review

■ The final part of our review is to determine whether substantial evidence exists to support the ALJ's affirmative finding that Chris was driving at the time of his tragic death. Section 2001.174 of the Administrative Procedure Act governs the scope of our review of this cause. *See* Tex. Ins.Code Ann. art. 3.50–2, § 4B(d); Tex. Gov't Code Ann. § 2001.174 (West 2000). We will reverse if the administrative findings, inferences, conclusions or decisions are not reasonably supported by substantial evidence. *Id.* § 2001.174(E). However, the standard for reviewing an agency's legal determinations is *de novo,* even under the substantial-evidence test. *Firemen's Pension Comm'n v. Jones,* 939 S.W.2d 730, 735 (Tex.App.—Austin 1997, no writ).

In *City of League City v. Texas Water Commission,* 777 S.W.2d 802 (Tex.App.— Austin 1989, no writ), this Court summarized the standards governing the appeal of an administrative order under the substantial-evidence rule.

1. The findings, inferences, conclusions, and decisions of an agency are presumed to be supported by substantial evidence, and the burden is on the party contesting the order to prove otherwise.

2. In applying the substantial evidence test, the reviewing court is prohibited from substituting its judgment

---

8. The proposal for decision includes the following conclusions of law:

 11. *Employees Retirement System of Texas; Blue Cross and Blue Shield; and Group Life & Health Ins. Co., Inc. v. Selena D. Cash,* 906 S.W.2d 204 (Tex.Civ.App.—Austin 1995, [writ denied] ) sets out the legal standards regarding presumptions and the burden of proof to be applied when an insurer invokes a felony exclusion.

 12. Evidence was introduced that the insured dependent had been engaged in a

felonious activity at the time of his death, which rebutted the presumption of innocence. *Cash* at 206.

9. The proposal for decision includes the following conclusion of law:

 13. Appellant [Nobles] failed to rebut the evidence that the insured dependent had been engaged in a felonious activity at the time of his death, as required by *Cash* at 206.

for that of the agency as to the weight of the evidence of questions committed to agency discretion.

3. Substantial evidence is more than a scintilla, but the evidence in the record may preponderate against the decision of the agency and nonetheless amount to substantial evidence.

4. The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency.

5. The agency's action will be sustained if the evidence is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action.

*Id.* at 805 (quoting *Texas Health Facilities Comm'n v. Charter Medical Dallas, Inc.,* 665 S.W.2d 446, 452–53 (Tex.1984)).

█ ERS adopted the ALJ's affirmative finding that Chris was driving the truck at the time of the fatal accident. We will examine the record to determine whether this finding is supported by substantial evidence. In his supplemental accident report, Sergeant Hearn concluded that Chris was the driver at the time of the accident. Hearn's deposition testimony indicated that he made this determination based on three factors: (1) Chris was the owner of the vehicle; (2) Nobles reported that a few minutes prior to the accident Chris drove the family home in the truck; and (3) McCarver's body had a foot pinned on the passenger side of the vehicle.

Nobles contended that McCarver *could* have been driving at the time of the accident and presented evidence in an attempt to discredit Sergeant Hearn's supplemental report and his conclusion that Chris was the driver. Chris and McCarver were lifelong friends who often drove each other's vehicles. Earlier in the evening, McCarver had expressed interest in testing the performance of Chris's truck since the engine had been modified to increase speed. McCarver was contemplating a similar modification to his own vehicle. Chris's body was found outside the truck and the passenger door was open. McCarver's body was found inside the truck and the driver's door was closed. Nobles asserted that Chris was a large man who could not have been ejected through a window. She concluded that he was thrown from the passenger seat, through the passenger door. Sergeant Hearn's initial accident report indicated that he could not discern who was driving the car at the time of the accident, although he was aware that the car was registered in Chris's name. Nobles asserted that Sergeant Hearn's supplemental report was filed in response to requests from Group Life, which she alleges had already decided to deny the claim based on the felony exclusion.

█ After reviewing all of the evidence, the proposal for decision states that (1) Nobles admitted she did not have actual knowledge of who was driving the vehicle; (2) Nobles failed to produce sufficient persuasive evidence to establish that the supplemental accident report was in error; (3) Nobles's theories about the accident were not convincing; and (4) McCarver's interest in the truck's performance did not establish that he was driving at the time of the accident. We are prohibited from substituting our judgment for that of the agency as to the weight of the evidence. *Gulf States Utils. Co. v. Public Util. Comm'n,* 841 S.W.2d 459, 474 (Tex.App.— Austin 1992, writ denied). We conclude that Sergeant Hearn's supplemental report and deposition testimony constitute substantial evidence to reasonably support the finding of fact that Chris was driving his truck at the time of the accident.

Nobles additionally challenges several conclusions of law, which we review *de*

*novo.* *See Firemen's Pension Comm'n v. Jones,* 939 S.W.2d at 735. Nobles does not challenge the findings regarding Chris's blood-alcohol level or that speeding and alcohol were factors contributing to the accident. We concur in the conclusion that Nobles *failed to rebut* the evidence that, had he survived, Chris could have been subject to felony charges for intoxication manslaughter. Therefore, even though the ALJ referred to *Cash* regarding allocation of the burden of proof, Group Life nevertheless assumed the burden of proving that Chris was the driver, a fact which the ALJ found to be true by a preponderance of the evidence. From our review, we conclude that there was substantial evidence to support this crucial issue in the case. Having found that substantial evidence supports the denial of Nobles's claim for accidental death benefits, we affirm the judgment of the trial court.