David Puryear, Justice
In this administrative appeal, Beauty Basics Inc. d/b/a Aveda Institute-Dallas *651 (the Institute), a private beauty school, contests a decision of the Texas Commission of Licensing and Regulation assessing a $1,500 administrative penalty against the school. See Tex. Occ. Code § 51.301 (granting Commission authority to impose administrative penalties for violations of laws established under regulatory program administered by Texas Department of Licensing and Regulation). The Commission assessed the penalty based on its determination that the Institute's tuition refund policy violated the Occupations Code by requiring students who withdraw prior to completing a cosmetology program to pay the remaining unpaid tuition. See id. §§ 1602.451, .452, .458, .459. For the following reasons, we affirm the judgment of the district court upholding the Commission's decision.
BACKGROUND[1]
The Legislature has entrusted the Texas Department of Licensing and Regulation (the Department) with the regulation of cosmetology and related occupations. See id. § 1603.002. The Commission governs the Department. Id. § 51.051(b). The Institute is licensed by the Department as a "private beauty culture school." Id. § 1602.303. As a result, the Institute is bound by the requirements of sections 1602.451-.465 of the Occupations Code, which govern the operation of beauty schools. See id. §§ 1602.451 -.465.
In July 2010, a student signed an enrollment contract with the Institute to attend a 1,500-hour course in cosmetology to run for fifty-two weeks within a period of twelve months. The tuition for the course was set at $19,282.50. In April 2011, after completing 73.54% of the program, the Institute expelled the student, for reasons not relevant to this appeal. At the time of her expulsion, the student had paid tuition and fees equaling $15,406.42. On the day it expelled the student, the Institute demanded $3,976.08 for the remaining tuition and fees owed for the full-year program. The student paid the Institute[2] and then filed a complaint with the Department.
The Department investigated the student's complaint and determined that the Institute's refund policy violated the Occupations Code by requiring students who withdraw early from the 1500-hour program to pay the full, unpaid tuition balance. Cf. id. § 1602.458(a) ("The holder of a private beauty culture school license shall maintain a refund policy to provide for the refund of any unused part of tuition, fees, and other charges paid by a student who ... is terminated from the course of training before completion of the course."). The Institute's refund policy-which is printed in its enrollment contracts-provided:
For students who enroll in and begin classes, refunds are determined by a formula using a percentage of time enrolled plus a termination fee of $100 (see the schedule below). The percentage of time enrolled is calculated by dividing the number of actual hours enrolled by the total number of actual hours in the course. The following schedule of tuition adjustments is used:
*652 ?
The Department issued the Institute a Notice of Alleged Violation, which the Institute disputed.
The Institute requested a hearing before an administrative law judge (ALJ) with the State Office of Administrative Hearings (SOAH), and in those proceedings the parties entered into a stipulation of the relevant facts of the case, narrowing the scope of the contested case to the statutory interpretation of the refund-policy requirements under the Occupations Code. After ruling in the Department's favor on the parties' cross-motions for summary disposition, the ALJ issued a proposal for decision (PFD) determining that the Institute's refund policy was in violation of the Occupations Code and recommending that a penalty of $4,250 be assessed. The Commission initially adopted the PFD without modification but, upon rehearing, issued a final order adopting the PFD in its entirety except to reduce the administrative penalty from $4,250 to $1,500 because it "believe[d] a lower penalty is more appropriate in light of all the facts and circumstances."
The Institute filed a suit for judicial review challenging the Commission's order, and the district court affirmed the Commission's decision. The Institute appeals, contending that the Commission and the trial court misinterpreted sections 1602.458 and 1602.459 of the Occupations Code in concluding that (a) the Institute may not recover unpaid tuition from a student whose enrollment is terminated after completing more than 50% but less than 100% of the school's program and (b) the Institute published a refund policy that did not comply with the Occupations Code.
DISCUSSION
Because the sole issue in this case is one of statutory construction, we review the Commission's legal determinations de novo.[3] See Nobles v. Employees Ret. Sys. of Tex. , 53 S.W.3d 483, 490 (Tex. App.-Austin 2001, no pet.). Two statutes set out the requirements of a beauty school's refund policy and, at the relevant time period, provided:
(a) The holder of a private beauty culture school license shall maintain a refund policy to provide for the refund of any unused part of tuition , fees, and other charges paid by a student who, at the expiration of the cancellation period established under Section 1602.457:
*653 (1) fails to enter the course of training;
(2) withdraws from the course of training; or
(3) is terminated from the course of training before completion of the course.
(b) The refund policy must provide that:
(1) the refund is based on the period of the student's enrollment , computed on the basis of course time expressed in clock hours;
(2) the effective date of the termination for refund purposes is the earliest of:
(A) the last date of attendance, if the student is terminated by the school;
(B) the date the license holder receives the student's written notice of withdrawal; or
(C) 10 school days after the last date of attendance; and
(3) the school may retain not more than $100 if:
(A) tuition is collected before the course of training begins; and
(B) the student fails to withdraw from the course of training before the cancellation period expires.
Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 1, 1999 Tex. Gen. Laws 1431, 2201 (amended 2011) (current version at Tex. Occ. Code § 1602.458(b)(1) ) (emphases added) (Former Section 1602.458 ).[4]
(a) If a student begins a course of training at a private beauty culture school that is scheduled to run not more than 12 months and, during the last 50 percent of the course, withdraws from the course or is terminated by the school, the school:
(1) may retain 100 percent of the tuition and fees paid by the student; and
(2) is not obligated to refund any additional outstanding tuition.
(b) If a student begins a course of training at a private beauty culture school that is scheduled to run not more than 12 months and, before the last 50 percent of the course, withdraws from the course or is terminated by the school, the school shall refund:
(1) 90 percent of any outstanding tuition for a withdrawal or termination that occurs during the first week or first one-tenth of the course, whichever period is shorter:
(2) 80 percent of any outstanding tuition for a withdrawal or termination that occurs after the first week or first one-tenth of the course, whichever period is shorter, but within the first three weeks of the course;
(3) 75 percent of any outstanding tuition for a withdrawal or termination that occurs after the first week of the course but not later than the completion of the first 25 percent of the course; and
(4) 50 percent of any outstanding tuition for a withdrawal or termination *654 that occurs not later than the completion of the first 50 percent of the course.
Tex. Occ. Code § 1602.459 (emphases added).
The Institute and the Commission advance two conflicting interpretations of the above refund provisions. The Institute contends that section 1602.459, subsection (a), entitles the school to collect 100% of the tuition if a student is terminated after completing at least 50% of the course, whether or not the student has already paid 100% of the tuition. The Commission, on the other hand, contends that subsection (a)-when read together with subsection (b) and section 1602.458-allows a school to retain all of the tuition already paid by a student terminated after the 50% mark but may not collect any further tuition that is yet unpaid. We conclude that the plain language of the relevant statutes supports the Commission's interpretation.
When interpreting a statute, we begin with its language and, if the statute is clear and unambiguous, we construe the language according to its common meaning without resort to rules of construction or extrinsic aids. Crosstex Energy Servs., L.P. v. Pro Plus, Inc. , 430 S.W.3d 384, 389 (Tex. 2014). We regard the words' plain meaning as the best expression of legislative intent unless a different meaning is supplied or is apparent from the context, or the plain meaning leads to absurd results. See ids="6959870" index="3" url="https://cite.case.law/sw3d/430/384/#p389">id. at 389-90. When interpreting a particular section of an act, we read it in conjunction with the act's other provisions rather than in isolation so as to give effect to every part of the act. See City of San Antonio v. City of Boerne , 111 S.W.3d 22, 25 (Tex. 2003).
We begin by analyzing the plain language of section 1602.458, which is the section of subchapter J-applying to "private beauty culture schools"-imposing the requirement that schools maintain a tuition refund policy and setting out the general requirements of such policy. See Former Section 1602.458. The statute requires a beauty school to (1) maintain a "refund policy" that (2) provides for the "refund of any unused part of tuition ... paid by a student" who withdraws or is terminated from the program before its completion. Id. (a) (emphases added). The plain language of section 1602.458 is unambiguous and evinces the Legislature's intention that students who do not complete a beauty-school program be refunded the tuition they have already paid for the course hours that they have not taken. This interpretation is supported by the plain meaning of the words "refund," "unused [tuition]," and "paid," which are not defined in the applicable act. See Webster's Third New Int'l Dictionary (1986) 1659 (defining "pay" as "to give in return for goods or services" and "make payment"), 1910 (defining "refund" as "to return (money) in restitution, repayment, or balancing of accounts," "a sum that is paid back," and "repayment"), 2461 (defining "tuition" as "the price of or payment for instruction"), 2514 (defining "unused" as "not used" and "waiting to be used: accrued, accumulated"). It bears noting that section 1602.458-while unambiguously requiring schools to refund tuition and fees paid-does not grant beauty schools the authority to demand further payments beyond what students have already paid upon withdrawal. Yet the Institute's "refund policy" attempts to do exactly that, purportedly under the next section appearing in subchapter J, section 1602.459.
Section 1602.459 sets out the required amounts of refunds owed by schools to early-withdrawing students, which are percentages *655 of "outstanding"[5] (i.e., "unused") tuition paid, depending on the percentage of the program that the student has completed. See Tex. Occ. Code § 1602.459. Again, the word "refund" appears: under subsection (a), students who have completed between 50-100% of a program are not entitled to a refund of any tuition they have already paid, although a school may provide some amount of refund if it so chooses. Id. (a) ("the school may retain 100 percent of the tuition and fees paid by the student [and] is not obligated to refund any additional outstanding tuition. ") (emphases added). The plain language of subsection (a) indicates that if a student has paid an amount of tuition greater than the pro rata amount corresponding to her period of actual enrollment (as calculated under section 1602.458 ), the school need not refund any of that unused and outstanding amount.[6] Significantly, however, section 1602.459-like section 1602.458-does not mention anything about a school demanding further tuition payments from a withdrawing student. The Legislature's repeated use of the common word "refund" is significant, indicating that the focus of the statutes at issue is on payments from the school to the student, not payments in the other direction. There can be no "refund" under any ordinary understanding of the word if there has not first been a payment. Sections 1602.458 and 1602.459 are concerned with the repayment by a school to a student of already-paid sums of tuition, calculated using the percentage of a program that the student has completed, and amounting to no refund if the student has completed more than 50% of the program.[7]
The Institute's strained interpretation would take these straightforward statutes one step further by contending that not only may a school retain any tuition already paid, but it may also demand that a student pay the full 100% of tuition that she has not already paid, even though she has not attended 100% of the course. However, no words to that effect appear in the statutes, and we cannot read this additional requirement into them. See City of Rockwall v. Hughes , 246 S.W.3d 621, 629 (Tex. 2008) (declining to read additional words into statute when construing it); Cameron v. Terrell & Garrett, Inc. , 618 S.W.2d 535, 540 (Tex. 1981) (noting that courts must presume that every word excluded from statute was excluded for purpose, and only when it is necessary to give effect to clear legislative intent can courts insert additional words or requirements *656 into statutory provision). Although section 1602.459 authorizes a beauty school to retain all tuition and fees paid by a student who has completed more than 50% of a course, nothing in that statute or in section 1602.458 addresses or authorizes any additional tuition charges, and an enrollment contract requiring such is in conflict with the unambiguous refund provisions of the Occupations Code. Moreover, the Institute's interpretation is at odds with the legislative policy of providing beauty-school students with protections regarding their education, as expressed in the plain language of the Occupations Code. See generally Tex. Occ. Code §§ 1602.451 -.465 (imposing various duties upon beauty schools and providing various protections for students).
The Commission and the trial court correctly interpreted sections 1602.458 and 1602.459 of the Occupations Code as not permitting a beauty school to demand or collect unpaid and unused tuition from a student who withdraws early from a program. To the extent that the Institute's refund policy required such payments from early-withdrawing students, we hold that the policy violated the Occupations Code, and the Commission properly exercised its authority to assess an administrative penalty against the Institute for such violation.
CONCLUSION
Because the Institute's refund policy did not comply with the requirements of the Occupations Code, the Commission's decision was not in error, and the Commission appropriately assessed an administrative penalty. Accordingly, we affirm the trial court's judgment upholding the Commission's decision.

The background facts are undisputed, as reflected in the parties' submission of stipulated facts at the administrative hearing.

The Institute would not release the student's transcripts to another school for transfer credits until the student paid the outstanding tuition that it demanded. See Tex. Occ. Code § 1602.455(c).

Although the Institute raises three separate issues on appeal, two of them are essentially restatements of its main issue on appeal: that the district court erred in affirming the Commission's "misinterpretation" of the applicable statutes. The Institute's other two issues-in which it contends, respectively, that the district court erred in "deferring" to the Commission's interpretation of the statutes at issue and in "limiting its scope of review" to the legal arguments considered by the ALJ-necessarily collapse into our de novo review of the Commission's legal determinations and do not require separate analysis.

The Institute argues in its appellate brief that the current version of section 1602.458 applies rather than the version of the statute that was effective at the time of the alleged violations. We reject this argument both because in the SOAH proceedings the parties stipulated that the prior version controls and because Texas jurisprudence mandates application of the prior version even had the parties not so stipulated. See City of Houston v. Rhule , 417 S.W.3d 440, 442 (Tex. 2013) (per curiam). In any case, the current version does not substantially differ from the former version for purposes of our analysis, as explained infra , and we would reach the same result if the same circumstances arose after the 2011 amendments became effective.

The words "outstanding tuition" in section 1602.459 can only reasonably refer to and mean the equivalent of the words "unused part of tuition" in section 1602.458, as the two sections, read together and in context of modifying the word "refund," provide the details of refund-policy requirements. The Institute contends that the use of the term "outstanding" supports its interpretation that a school can demand a student pay the full amount of unused and yet unpaid tuition. However, such an interpretation would be at odds with the Legislature's consistent and repeated use of the term "refund," which unambiguously means "return" of funds already paid. There could be no repayment of "unused" or "outstanding" tuition if a student had not already paid it. Simply put, the word "refund" means "refund," as used in common parlance.

In fact, this is exactly what happened with the student who filed the complaint: at the time her enrollment terminated, she had paid roughly $800 more than she owed based on the period of her enrollment. The Commission concedes that the Institute was entitled to keep the extra $800 under section 1602.459.

This interpretation is also supported by the plain meaning of the word "retain": "the school may retain 100 percent of the tuition and fees paid by the student...." See Webster's 1938 (defining "retain" as "continue to have, use, recognize, or accept" and "to hold or continue to hold in possession or use").